META HUNZE (REED), APPELLANT, v. FRED L. HUNZE, RESPONDENT.—
109. S. W. (2d) 908.

St. Louis Court of Appeals. Opinion filed November 2, 1937.

846

*J. Grant Frye* and *H. Howard Frye* for appellant.

*R. P. Smith* for respondent.

HOSTETTER, P. J.—This controversy originated in the Cape Girardeau Court of Common Pleas. The parties were formerly husband and wife. They were married April 26, 1924, and separated January 23, 1932, and the wife, in an uncontested suit, obtained a divorce from the husband in September, 1932, and was awarded the care and custody of Patsy Virginia Hunze, the seven-year-old product of the union.

The decree for divorce further provided that the husband should pay the mother $15 per month for the support and education of the child, and that he be permitted to visit the child in the custody of its mother at reasonable and suitable times.

Within ten days after the rendition of the divorce decree the mother married Dale Reed and has since lived at Jackson, and, within thirty days after the rendition of the divorce decree the father married Georgia Compton and they live at Cape Girardeau. These two towns are about ten miles apart.

It is claimed on behalf of the father that leading up to the divorce, an offer was made by counsel for the wife, that if he would enter his appearance and by his silence permit the mother to obtain the divorce, she would assume full responsibility for the care and support of Patsy Virginia and that no charge detrimental to his character would be set out in the petition for divorce and that he would be notified of the day of trial, and that, upon such assurances the husband entered his appearance and consented that the cause might be heard by the court.

It is further claimed that the husband was not notified of the time of the hearing, but that a short time thereafter he learned of all the contents of the decree except that portion providing for the payment by him of the $15 per month for the support and education of the child.

It is further claimed that different counsel from those now representing the parties on this appeal, were representing the spouses at the time of their legal separation.

There is no testimony in the record on this subject, but the matter is apparently adverted to in explanation of the strenuous efforts made by the father to keep from paying for the support and education of his minor child.

The charges actually contained in the petition for the divorce were that defendant failed to support, or to provide a home for plaintiff, and his alleged association with other women.

An execution was issued, at the instance of plaintiff, without the co-operation of her attorney, on the judgment, on August 26, 1933, which execution was quashed by the court on motion of defendant. The defendant's motion to quash was based on the claim that such order for the payment of the $15 per month was outside the pleading and a fraud on defendant.

However, on August 26, 1935, the plaintiff obtained another execution and garnished the defendant's wages. He was then receiving about $80 per month wages from the Marquette Cement Company. Defendant filed another motion to quash on the same grounds set up in his previous motion, and the trial court overruled his motion to quash this time, and, after making other efforts to defeat the collection of the $15 per month, the parties reached a compromise by an agreed stipulation of January 17, 1936, which resulted in the settlement of all back due payments, and regularly continued payments since that time.

The particular matter involved in this appeal is the modication of the original divorce decree in respect to the times and manner of the visitation of the defendant father to his daughter, Patsy Virginia.

Defendant's motion to modify contains the following, viz:

". . . plaintiff and defendant have each remarried since said decree and it is impossible for defendant to visit said child in the home of plaintiff in peace and without quarreling and disputes between plaintiff and defendant, and defendant desires to have the company and to visit said child in peace and without unpleasantness between himself and plaintiff.

"Wherefore, . . . defendant prays that said decree may be amended and modified to specify that the visits of defendant with said child shall be at the home of defendant at Cape Girardeau, Missouri, on week-ends and during summer vacations so that such visits will not interfere with said child's schooling."

On this motion plaintiff (Mrs. Reed) offered no testimony, but defendant and his present wife, Georgia Hunze, both testified in support of the motion to modify.

The trial court then made the following order, viz:

"It is considered, ordered and adjudged by the court that the Decree in said cause be modified so as to permit the defendant, the mover in this application for modification of the decree, to have the companionship of his child by having it visit him in his home, and that he, the father of said child, call for the child on the 2nd Saturdays in each month, during vacation time, and after two weeks, the child be returned to its mother; and that the mother, the plaintiff herein, be required to deliver the child to the defendant, the father, upon his calling for her, the child, at these times during the school vacation; and during the time that school is on, that he, the father, be, and he is hereby authorized to call for the child on the 2nd Saturday of each month and have the child visit with him until the following Sunday, and shall then return it to its mother at her home on or before 8 o'clock P. M. Sunday.

"It is further ordered by the court that $25.00 be allowed for expenses of plaintiff, including her attorney's fee, to be paid by the defendant herein;

"And it is further ordered by the court that each party, the plaintiff and the defendant herein, pay one-half of the expenses of this suit, the costs herein.

"And it is further ordered by the court that the defendant be given credit on his monthly payments for the amount of time that he has the child in his custody during the summer months."

From this order plaintiff (Mrs. Reed) duly perfected her appeal to this court.

It is in evidence that the child spent a good portion of her time with Mrs. Mills, her maternal grandmother, and that the latter brought suit

against the child's father, for outlays made prior to the rendition of the divorce decree in taking care of the child, which suit was never tried. This illustrates the extent of the bitterness which existed between the defendant father on the one side and his former wife, Mrs. Reed, and the child's grandmother on the other.

It is also significant that the petition for the divorce did not contain a prayer for a judgment against defendant for the support and education of the seven-year-old child, Patsy Virginia. This would lend color to the genuineness of defendant's claim that that portion of the judgment was entered in violation of an understanding that the wife was to assume the responsibility of the care and support of Patsy Virginia.

It was commendable in both spouses that the charges contained in the divorce petition made by the wife should be softened so as not to be detrimental to defendant's character, this because it would not be a monument of infamy which in future years might injuriously affect the innocent child. It must be remembered that in the legal disruption of a home containing minor children much stress is and ought to be given, to the wholesome doctrine that the welfare of the child should be the pole star in guiding the courts. One or both of the parents may be in grievous fault, but it is the policy of the courts to protect the rights of the children regardless of the effect it may have on the parents.

It is apparent that each of the warring spouses was *in pari delicto* in being so precipitate in choosing a new mate, the wife acting in ten days and the husband in thirty days after the severance of the marital tie theretofore existing between them.

The husband's seeming remissness in furnishing support for his minor child may be, to some extent, condoned on account of his probable belief that the child would, on account of her tender years, be better taken care of by the mother than by him, but, of course, that was no justification for him to shirk the legal duty which the law imposes on every father to support his minor children.

It is shown in the testimony that extreme bitterness exists between Mrs. Reed and the grandmother on the one side and defendant and his present wife on the other. The character of the cross-examination of defendant and his present wife, which was, of course, colored and inspired by plaintiff (Mrs. Reed) illustrates the intense hatred she entertains against both. Mrs. Reed and defendant couldn't talk over the telephone about the latter's wish to buy some clothes for the child without loud and angry colloquy.

While the testimony shows that the defendant apparently manifested little concern in the welfare of the child, yet he and his present wife testified that he made efforts to have the child come to Cape Girardeau so he could buy her some clothes and that the child was, apparently, willing to come and have him do so, but that her mother refused in

a wordy altercation and threatened, by phone, to bring him into court and, as she said, "Close your mouth, and close it for good, and you know me," and likewise, discouraged his efforts to see and talk to the child when he would meet her on the street.

It is strenuously urged by counsel for Mrs. Reed that the trial court had no right or power to make any change in the original order in respect to the custody of the child in the absence of a showing of a change in the circumstances and surroundings since the rendition of the original decree. We think there is a showing of a substantial change since the date of the original order.

No student of psychology versed in the subleties of human behavior, could fail to be impressed with the fact that plaintiff's daring disregard of the conventionalities in remarrying in ten days after the date of the divorce decree was an effort to heap contumely and humiliation on her discarded mate. His remarriage within twenty days thereafter was doubtless his answer to her challenge. The bitterness necessarily became more intense growing out of these occurrences. The stormy scenes following, some of which have been detailed, brought the mutual hatred and spite to the boiling point.

Not the least of these untoward incidents was the discovery, as claimed by the defendant, of the $15 per month judgment for the support and education of the child, when it was his understanding, whether it had any foundation or not, that the wife agreed to assume the responsibility of the care and custody of the child.

Would it be pleasant for the father or the child to see each other only in the home of the mother or grandmother where he and his present wife are hated and despised? Certainly not. Defendant in particular would be *persona non grata* in either home. It is best for the child to learn to know her father and to respect and love him regardless of his faults. That would necessarily imply that their meeting places should be in congenial and wholesome surroundings. The trial court is better versed with the true *status* of the surroundings than we could possibly be, and we defer largely to the judgment reached by that court. We believe that the judgment reached by the trial court is wise and for the best interest of the child. The conclusion reached by the trial court does not involve or lend sanction to the idea of the child being taken beyond the jurisdiction of the trial court. Jackson, where the mother resides, is the county seat of Cape Girardeau County, and Cape Girardeau, where the father resides, is the metropolis of the County.

The views herein expressed find ample support in the following cases: Salkey v. Salkey (Mo. App.), 80 S. W. (2d) 735; Lampe v. Lampe (Mo. App.), 28 S. W. (2d) 414; Phipps v. Phipps, 168 Mo. App. 697, 154 S. W. 825; Kaplun v. Kaplun (Mo. App.), 227 S. W.

852

894; Newlon v. Newlon (Mo. App.), 6 S. W. (2d) 669, and Rone v. Rone (Mo. App.), 20 S. W. (2d) 545.

It follows that the order and judgment of the trial court should be affirmed, and, it is so ordered.

*Becker* and *McCullen, JJ.*, concur.