Ruth MITCHELL, Appellant,

v.

Russell MITCHELL, Respondent.

No. 23346.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

C. M. Hulen, C. M. Hulen, Jr., Moberly, for appellant.

Roy W. Brown, Haskell Imes, Blackford, Imes, Compton & Brown, Kansas City, for respondent.

BROADDUS, Judge.

This is an appeal by the plaintiff from the order of the Circuit Court modifying a decree of divorce as respects the custody of a minor child.

The action for divorce originally filed in the Circuit Court of Randolph County was sent to Macon County by change of venue. A daughter had been born to the parties on April 19, 1948. A decree of divorce was entered in plaintiff's favor on April 2, 1958, awarding general custody of the child to plaintiff "with rights of reasonable visitation to defendant, at the home of the parents of plaintiff, at reasonable times and at times convenient to plaintiff." The decree also awarded plaintiff the sum of $50 per month for the support of said minor child. The divorce suit was bitterly contested and reached this court being reported in 319 S.W.2d at page 906.

On May 20, 1960, the defendant filed his motion to modify the divorce decree, and on September 16, 1960, a hearing was had on said motion. At the conclusion of that hearing the court entered an order modifying the divorce decree in the following particulars:

"That the defendant shall have the physical custody of his minor child, Beverly Jean, on September 24, 1960 from 2:00 p. m. until the following Sunday at 7:00 p. m. and each second Saturday thereafter of each month beginning at 2:00 p. m. and ending at 7:00 p. m. the following Sunday, and on Christmas Day of each year from 2:30 p. m. to 8:00 p. m. for the purpose of a visitation at the home of his parents, Mr. and Mrs. Robert Mitchell.

"It is further ordered that the defendant will pick up the minor child, Beverly Jean, at the time specified at the Merchants Hotel at Moberly, Missouri, each visitation day and return her to the Merchants Hotel at the end of each visitation period.

"It is further ordered beginning June 15, 1962 on condition that defendant has fully complied with all orders of this court concerning child support and costs and post a bond in the sum of Five Hundred Dollars ($500.00) so long as defendant is a non-resident of the State of Missouri, he shall be permitted to have the physical custody of the minor child for a two week period between June 15th and August 31st, 1962 for a vacation trip only, said time to be agreed upon by the parties; otherwise by the court upon application of either party.

"It is further ordered that after June 15, 1962 defendant shall have the physical custody of said minor child on the second Friday of each month from 6:00 p. m. to the following Sunday at 7:00 p. m. on condition that the defendant post a bond in the sum of Five Hundred Dollars ($500.00) so long as he is a non-resident of the State of Missouri.

"It is further ordered that defendant be permitted to talk to the minor child by telephone at all reasonable times.

"It is further ordered that the plaintiff will furnish proper clothing for the minor child at each visitation period and the defendant shall return same in reasonably good condition."

At the time of the trial of the divorce suit plaintiff worked in Moberly but resided with her parents at Higbee in Randolph County. After the termination of the divorce suit in January, 1959, plaintiff rented a six-room house in Higbee where she has since been residing with the child.

Prior to the commencement of the divorce action, the parents of defendant had taken care of the child for approximately nine years, during the daytime while plaintiff worked, and would occasionally care for the child during the nighttime. They also took care of the little girl during the times she had the measles and scarlet fever. During all that period of time the relationship between the child and the parents of defendant was "very close" and "kindly." From the date of the divorce in April, 1958, to January, 1959, defendant's parents had the child in their custody; thereafter, down to date the child has been in the custody of plaintiff.

At the time of the hearing on defendant's motion, defendant was in arrears in the payment of child support, alimony and court costs. He remarried on November 21, 1959, and now resides in Kansas City, Kansas. His present home consists of a large four-room apartment in a nice part of Kansas City, containing one bedroom and one front room with a divan which makes into a bed; the home is a house for two families, one family living downstairs and defendant and his wife living upstairs. There are no children born of this second marriage. Defendant has worked for Navajo Freight Lines as a trailer-tractor driver for approximately two years as of October 28, 1959, at a salary of $2.65 per hour for forty hours, plus any overtime pay which he may receive. His net take-home pay is approximately $350 per month. His wife's average net income is about $180 per month.

**118**

Since the custody of the child was changed to plaintiff in January, 1959, defendant attempted to visit with the child in plaintiff's home, and was told that he "wasn't welcome, to stay away." Defendant called on the telephone to arrange visits with the child and when defendant would arrive from Kansas City, he was told by plaintiff that she had changed her mind, and that he couldn't see the child. Plaintiff would sometimes bring the child to Moberly, and would refuse at times. While plaintiff and the child were visiting with defendant and his present wife, plaintiff would shun defendant's present wife, and would refuse to speak to her. Defendant has never been alone with the child, and the child has not been allowed to visit with defendant's parents in the home of defendant's parents. Defendant was never allowed to visit the child in plaintiff's home. On one occasion, the child's birthday, defendant visited with the child at the home of plaintiff's aunt, Louise Lyons, at which time the defendant suggested that he and plaintiff and the child go to Reeds Corner for a birthday dinner. The suggestion was refused by plaintiff. During February, 1959, defendant called plaintiff every weekend and requested to see the child, and was allowed to see the child twice for about thirty minutes each, and was denied twice.

Defendant also stated that he could not say definitely how many times he had requested to see the child between March and December of 1959, but that he did not let a month go by without making a request. Sometimes his requests were complied with and at other times ignored; that during the period from January 1, 1960, to September 16, 1960, he saw the child four or five times.

Plaintiff testified that she has never refused to allow defendant to visit with the child when it was convenient to plaintiff to do so; when to allow defendant to visit would interfere with plans already made, plaintiff would refuse to allow defendant to visit with the child. However, plaintiff would sometimes break plans to allow defendant such visits. Plaintiff also testified

that she has refused to let defendant visit with the child in the home of his parents, and has refused to leave the child alone with defendant, and to let the child out of her sight with the defendant; that she has never refused to let the child talk with defendant on the telephone; that she knows of no specific act or happening to cause her to fear for the child's safety, although defendant had upset the child at times; that she would fear for the child's safety if it were to visit in defendant's home alone, and she (plaintiff) would be a "nervous wreck."

Plaintiff contends that the evidence does not show any new facts upon which a change in the custody of the child can be made. She relies upon the rule announced in many cases that the moving party must show that there has been a change of facts or circumstances arising since the rendition of the original decree in order to obtain a modification.

It must be kept in mind that the order appealed from does not change the general *custody* of the child. The original decree was only modified with respect to *visitation* privileges. This court announced in the case of Phipps v. Phipps, 168 Mo.App. 697, 154 S.W. 825, that where the order merely relates to visitation privileges only slight changes in the conditions arising since the original decree was entered will justify the order. At the time the divorce was granted plaintiff was residing at the home of her parents. In view of that fact it was only natural that the trial court would grant defendant the "right of reasonable visitation in the home of the parents of plaintiff." However, that situation no longer exists. Plaintiff has rented another house in Higbee where she lives with the child. When defendant attempted to visit the child in plaintiff's home he was told that he "wasn't welcome—to stay away." He has only been able to visit with his daughter on sidewalks, or in restaurants or drugstores. In our opinion the evidence discloses such a change of circumstances since the original decree was entered as would justify the

court's order. This view finds support in the cases of Reed v. Hunze, 233 Mo.App. 845, 109 S.W.2d 908 and Perr v. Perr, Mo.App., 205 S.W.2d 909.

The rule is well settled that the finding of the trial judge on motion to modify should not be lightly disturbed, and should, in fact, be deferred to, unless it is apparently in conflict with a clear preponderance of the evidence and discloses a manifest abuse of judicial discretion. Salkey v. Salkey, Mo.App., 80 S.W.2d 735, 740. We have read with interest the court's oral finding made at the close of the evidence. It shows a clear conception of the evidence, a desire to further the best interest of the child, and to deal fairly and kindly with her parents.

The order modifying the decree should be affirmed. It is so ordered.

All concur.