**Charles E. LICKTEIG, Appellant,**

**v.**

**Marilyn GOINS, Respondent.**

**No. 25142.**

Kansas City Court of Appeals, Missouri.

June 10, 1970.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 5, 1970.

Thomas M. Sullivan, Kansas City, for appellant; Downey, Sullivan, McCormick & Fitzgerald, Kansas City, of counsel.

Sol M. Yarowsky, Kansas City, for respondent.

HOWARD, Judge.

This case comes to the writer on reassignment. It is an appeal by the husband from a judgment of the circuit court of Jackson County, changing the custody of a minor daughter from the husband to the former wife. The parties were married in 1949 and lived together as man and wife until 1960. They were divorced in 1962. There were two children born of this marriage, a boy 15 years of age, and a girl 10 years of age, at the time of the hearing in the trial court. At the time of the divorce in 1962, the wife had left the home and removed from the state. She was served by registered mail and a return receipt was filed with the court but she did not appear and a default divorce was granted to the husband on his petition, alleging her improper association with other men during their marriage. The custody of the two children was awarded to the husband. The husband and the children continued to live in the Kansas City area until 1967 when the husband's employer transferred him to Houston, Texas. He applied to the court for permission to remove the children to Houston and such permission was granted after a hearing at which both parties appeared by attorneys. The ex-wife, who is now remarried and is the respondent, Marilyn Goins, filed a motion to modify the decree so as to give her custody of the daughter, but requested that the son remain in the custody of his father. The motion was filed while the children were visiting their mother pursuant to arrangements for such visit by the parties, and the husband was temporarily in Kansas City. At the request of the parties, the hearing was held some four days after the motion was filed. After the hearing, the trial court entered its order modifying the divorce decree by placing custody of the daughter in the wife. Custody of the son was not changed and although the wife specifically declined to ask for child support, the court ordered child support for the daughter in the amount of $15.00 per week.

The evidence showed that the wife had associated with two or more other named men prior to the divorce and that during the year of the divorce (whether before or after the date of the decree does not appear), she had taken the children and disappeared and their whereabouts was not discovered for a period of several months. They were finally located through the services of a private detective in Las Vegas, and the wife's mother and father accompanied the husband to get the children and bring them back. It appears that the husband and the wife's mother have remained on friendly terms. During the time that the husband had the children in the Kansas City area, the wife's mother saw the children frequently, both in her own home and in the home of the husband, and helped with the children, such as taking care of them when they had colds, etc. It also appears that the wife, when she returned from Las Vegas, visited the children in the husband's home frequently.

Approximately two years before the hearing below, the wife began an association with Ova H. Goins, her present husband. She had been acquainted with him prior to that time. He was at that time married, although separated. The evidence is that the wife went with or dated Ova Goins for about a year; he was at her apartment every night for supper and maintained a mailing address at her apartment and had his name on the mail box, although the wife testified that he had a room with friends where he lived. Ova Goins and Anna Goins were divorced approximately 13 months after his association with respondent started. Ova Goins and Marilyn Lickteig were married three days after the Goins' divorce. Goins testified that he never saw Marilyn Lickteig "romantically" until after his divorce from Anna Goins. Although this testimony was in direct contradiction to the testimony of Marilyn Goins who testified that they planned to be married as soon as he got his divorce, such contradiction was not explained.

Goins had been employed for many years by Fairbanks Morse in charge of the core room in the foundry. This employment ceased the first of the year before the hearing in the trial court in July and he started his own TV and appliance sales and repair business. Thus, this business had been in existence for approximately six months at the time of the hearing. Marilyn Goins was regularly employed and testified that such employment was necessary to help support herself and her husband. She and her husband presently live in a two bedroom apartment in Johnson County, Kansas, in an apartment complex which provides a swimming pool and which is across the street from the school which the daughter would attend and near a Catholic Church which the daughter would attend. Mr. and Mrs. Goins go the the Unity Church on the Plaza in Kansas City, Missouri.

Mr. Goins testified that he was very desirous of having custody of the daughter transferred to his wife and that the daughter would be most welcome in his home. He and his present wife testified that the wife would quit work to care for the daughter if necessary and that if the apartment proved inadequate, they would try to buy a house and do all things necessary for the welfare of the daughter.

This is the third marriage for Mr. Goins. He was married at an early age and had two sons. The first wife divorced him while he was in Service and soon remarried and took the boys away. Mr. Goins has not seen them since and has not supported them. He does not know where they are. The second marriage to Anna took place in Germany. There was one daughter born of that marriage. Anna was granted an uncontested divorce on the grounds that her husband was living in open adultery with Marilyn Lickteig. Custody of this child was granted to Anna and she was awarded alimony and child support. Ova Goins is behind in the payment

of child support and has made only one small payment on alimony. An attempt was made to show that the arrearages as to child support resulted from a dispute over a federal income tax refund check. However, the transcript contains no evidence as to any such check. The only reference thereto is in leading questions propounded to Anna Goins on her cross-examination at the hearing in the trial court and she answered "no" to each such question. Some four months before the hearing in the trial court on this custody motion, Mr. Goins filed a verified motion in his divorce case, seeking modification of the award of alimony to Anna Goins. He therein swore that since the decree "his employment was terminated and he is now self employed as a radio and television repairman; that he has no regular income and will not have for a long period of time until he can establish himself in this work; that he is without means to pay alimony to defendant * * *."

Although the date is not precisely fixed, it appears that about the time that the husband applied for permission to remove the children to Texas, the wife took the daughter from her mother's home on the pretext that she was going to buy her some sunglasses and disappeared with her. She did not return the daughter until the next day after she had been specifically instructed to return her by her attorney.

The wife introduced the testimony of her mother, her sister, and a long-time friend, concerning her character and fitness to have custody of the daughter. Although the mother had supported and testified on behalf of the father in the original divorce proceedings, she now thought that her daughter was "wonderful", Mr. Goins was "wonderful", and his business was "wonderful". The wife's sister, when asked for her opinion of the present Mrs. Goins, testified: "I think that she is a person of very high morals and good character and extemely well balanced, a person of

integrity. She has integrity. Definitely, she is true to herself." She also had the highest praise for Mr. Goins. The family friend was likewise expansive in her testimony as to the character and fitness of the wife.

It seems to be conceded that the husband (Mr. Lickteig) is a fit person to have custody of the daughter and that he has done a good job in taking care of both children during the period since the divorce in 1962. The wife's argument is that because of the distance between Kansas City and Houston, she and her mother cannot frequently visit the daughter and that the daughter, age 10, now needs the advice and counsel of an older female. She complains that the daughter associates primarily with friends of her brother; that she is not interested in such feminine matters as cooking and embroidery, but prefers to run with the boys.

Based on this evidence, the trial court entered its order transferring custody to the wife. If such transfer is affirmed the daughter will live in the home of Mr. and Mrs. Goins in Johnson County, Kansas. The trial court found that the wife and Mr. Goins had established a stable home environment; that the wife is now of good moral character; is able to provide an adequate and suitable home; and that in view of the age and sex of the minor daughter, her welfare would be best served by close association with a female personality and that the husband does not provide this.

■ The cases are legion holding that a decree of divorce awarding custody of minor children can only be modified to change the custody on the basis of changes in conditions subsequent to the divorce decree. It is not every change that calls for a modification but modification should occur only when the changed circumstances require modification in the best interests of the welfare of the child. See, among the many cases, Irvine v. Aust, Mo.App., 193 S.W.2d 336; and S——— v. G.———, Mo.App., 298 S.W.2d 67.

■ In our review we defer, where credibility is involved, to the finding of the trial court who had the opportunity to observe the witnesses but in so deferring, we cannot abandon our duty to review the case de novo as required by the rules. This function has been well set out by this court in Hirsch v. Hirsch, Mo.App., 366 S.W.2d 484, l. c. 489:

"A provision [for child custody] once made becomes as conclusive as any other order or decree, and can only be modified on a showing of sufficient subsequently changed conditions. Here, the father has the burden of proof of showing by a preponderance of the credible evidence that in the eight months since the date of the divorce decree granting custody of these children to their mother there has occurred, changed facts and circumstances which, in the best interests of the children, require modification of the original decree. In our review, we must bear in mind that it is not sufficient simply to show some change in circumstances but that modification is justified and permitted only upon proof of changed conditions affecting the welfare of the children to a substantial or material extent, and that it is no longer in the best interests of the children to have the original custody continued. The very welfare of the children itself must require the change. Hurley v. Hurley, Mo.App., 284 S.W.2d 72, loc.cit., 73–74; Schumm v. Schumm, Mo.App., 223 S.W. 2d 122.

"We, of course, give proper deference to the trial judge's action, particularly if the credibility of witnesses is involved, and we also take into consideration the fact that he sees the parties and witnesses first hand. We do not lightly disturb his judgment. Even so, it is the settled law and it is our clear duty to review the entire record, to correct any error

the trial court may have made, and to enter such judgment as justice requires.

"Upon our independent review of the record we have concluded that respondent father has failed to carry his burden of proof of showing a substantial change of conditions since the divorce decree adversely affecting the welfare of the children and requiring for the sake of their welfare that their custody be changed from their mother to him."

In the present case, the marriage was dissolved because of the misconduct of the wife. Such misconduct involved association with other men in complete disregard of the marriage vows. Apparently, the wife thought no better of the sanctity of the marriage vows when she began her association with her present husband (who was then married), which association continued for over a year before he was divorced. They had planned to be married and were, in fact, married three days after his divorce although he testified he had not seen his present wife "romantically" prior to the divorce. The wife and her present husband assert that she will quit work if necessary to care for the daughter and that they will buy a house if it is in the daughter's best interest. Yet, the evidence shows that Ova Goins, who had long had substantial and continued employment, commenced a business of his own some six months prior to the hearing below, and four months prior to such hearing, filed an affidavit that he was without funds to pay alimony to his second wife and the evidence is that there were large arrearages at the time of the hearing, both in alimony and child support. Further, he has never supported his two children from his first marriage. The record is devoid of any showing of economic ability to carry out the asserted good intentions of the wife and her present husband. During the time before his divorce, Ova Goins ate supper regularly at his present wife's apartment; he had a mailing address there; his car was observed parked behind the apartment house all night on one or more occasions. This relationship may have been purely platonic

as they maintain, but such conclusion is not required by the evidence in the record. Approximately a year and a half before the hearing below, the wife undertook to run away with the daughter to keep the husband from taking her to Texas. She returned her on the express instructions of her attorney.

■■ Under these circumstances, we cannot conclude that the best interest of the daughter requires that she be placed in the home of Mr. and Mrs. Goins which had been established less than a year at the time of the hearing. In view of all of the admitted past derelictions, we can only speculate and hope that Mr. and Mrs. Goins have a stable marriage relationship and will be able to maintain a home in the future which would provide a suitable environment for this young daughter. Such conclusion can only be based on expressions of good intentions for the future. It finds no firm foundation in past actions. Change of custody cannot be based on speculation or experiment. See Irvine v. Aust, Mo.App., 193 S.W.2d 336; and S—— v. G——, Mo.App., 298 S.W.2d 67.

We, therefore, conclude that the changes in conditions do not require a change of custody in the best interests of the minor daughter. On the contrary, we conclude that the best interests of the daughter require that the original provision for custody in her father remain undisturbed. It would concededly be advantageous for the daughter to have the benefit of association and counsel with an older female. The absence of this desirable situation results from the conduct of the wife and while the husband has not remarried and there is no older woman in his home, such considerations cannot justify the experiment of placing the daughter in the home of her mother and her present husband under all of the circumstances. The judgment of the trial court is, therefore, reversed and the cause is remanded with directions to reinstate the provisions of the original divorce decree as to custody.

CROSS, J., concurs.

FRANK CONNETT, Jr., Special Judge, dissents in separate dissenting opinion filed.

SHANGLER, P. J., not participating.

FRANK D. CONNETT, Jr., Special Judge (dissenting).

This is an extremely close case. If I had heard the case while sitting as a trial judge I very well might have reached the same conclusion as the majority has reached here. However, I have heard the case sitting as an appellate judge. In this position I believe that although we review the case de novo we are required to defer to the finding of the trial judge unless it is apparently in conflict with a clear preponderance of the evidence and discloses a manifest abuse of judicial discretion. Mitchell v. Mitchell, Mo.App., 350 S.W.2d 116, 119; Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364; Endicott v. Endicott, Mo.App., 435 S.W.2d 388, 391. See also Asbell v. Asbell, Mo.App., 430 S.W.2d 436, 439.

The majority's decision in favor of the father appears to me to be based upon a lack of faith in the mother's reformation. I must confess that I too have some doubt. However, the trial judge weighs the credibility of the witnesses. There was testimony in the case supporting her claim of reformation. The trial judge had to choose between a mother, whose reformation was yet to be established by actions, and the prospect of the girl growing up without a mother figure with which to identify. I do not look upon his decision as an experiment but simply a decision between two poor choices. He saw the parties and the witnesses and heard them testify. He is in the best position to choose. Moore v. Moore, Mo.App., 429 S.W.2d 794, 799(6). Certainly I cannot find that the trial judge's finding was contrary to a clear preponderance of the evidence. Therefore, I respectfully dissent.