TALBOT, Respondent, *v.* TALBOT et al., Appellant.

No. 8716

Submitted April 23, 1947. Decided May 23, 1947.

181 Pac. (2d) 148

Mr. J. D. Taylor, and Mr. D. A. Paddock, both of Hamilton, for appellants. Mr. Taylor argued the cause orally.

Mr. W. T. Boone and Mr. J. W. Rimel, both of Missoula, for respondent. Mr. Boone argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is a proceeding in habeas corpus seeking custody of a minor child, Lowetta Gene Talbot.

The record discloses that petitioner and defendant, Kenneth G. Talbot, were intermarried on December 26, 1941, at Seattle, Washington. At the time of their marriage they both resided in Montana. Of this union Lowetta Gene was born on September 16, 1942. In December, 1942, Kenneth entered the armed forces. Petitioner was in Montana when Lowetta was born and went to work in Seattle in December, 1943, first as a waitress and later at a cigar stand.

In December, 1945, petitioner commenced an action for divorce in King county, Washington. The defendant, appellant here, was served with process in Seattle on the day that he obtained his discharge from the armed forces. He thereupon entered into a property settlement agreement with his wife, by the terms of which, in addition to certain property, she was to have the care, custody and control of Lowetta. When that

action was commenced and the property settlement agreed upon, Lowetta was living in Montana with her maternal grandmother, with whom she had lived nearly all the time since her birth, pursuant to an arrangement made by petitioner with her mother.

After the divorce action was commenced and the property settlement made, petitioner took Lowetta to Seattle to live with her. In March, 1946, and before the trial of the divorce action in Seattle, Kenneth took Lowetta from Seattle to Corvallis, Montana, and to the home of his parents, the other defendants above named, where the child has since remained.

The divorce action was tried in June, 1946, resulting in an interlocutory decree in favor of plaintiff. The decree recites that defendant did not appear in person but was represented by counsel and evidence was presented in his behalf in the form of depositions. The court found the defendant guilty of cruelty to plaintiff, approved the property settlement agreement, found plaintiff a fit and proper person to have the custody and control of Lowetta and awarded custody to her with the right of defendant to visit the child at reasonable times and places and to have the child live with him at least one month during the summer vacation.

When Kenneth brought the child to Montana he commenced a divorce action in Montana, which is still pending.

This proceeding was commenced in September, 1946. The petition alleges that petitioner was awarded the custody of the child by decree of the Washington court, which has not been revoked or modified; that the child was with her in the state of Washington for several weeks after the divorce action was commenced and that on March 23, 1946, the father, without petitioner's consent, took the child to his parents in Montana; that she has demanded the return of the child but defendants refuse to surrender the child to her.

The answer of defendant Kenneth Talbot alleges that neither he nor petitioner was a resident of the state of Washington at the time of the Washington decree but both were residents

of the state of Montana and that Lowetta at all times was domiciled in Montana; that it is for the best interest of the child that its custody be awarded to him; that the Washington decree was procured through fraud in that petitioner, plaintiff in the divorce action, was not a bona fide resident of the state of Washington and that the child was not in Washington at the time the complaint was filed nor at the time the decree was entered.

He further alleges in his answer that after he returned to Seattle from overseas, he lived with petitioner in her apartment in Seattle until the day he went to Camp Lewis on the 28th day of December to receive his discharge; that prior to leaving her apartment to go to Camp Lewis, she requested him to advise her as soon as he had received his discharge and to come back to her apartment and that if she were not there he should wait until she arrived; that he consented to follow out her directions; he obtained his discharge and returned to her apartment, finding her absent therefrom; while awaiting her arrival he was served with the divorce papers; that petitioner and her attorney in Seattle induced him to make the property settlement agreement; that thereafter and on January 22nd, petitioner returned to Montana where defendant Kenneth then lived ''and assumed reconciliation was affected in so far as defendant was concerned'' and they returned to Seattle, she and the child going by airplane and he taking the bus; that because of information acquired while in Spokane, he returned to Montana and instituted a divorce action, which is still pending.

Defendant alleges that he is a fit and proper person to have the custody of the child and is in a position to have her educated and alleges that the petitioner is not a fit and suitable person to have the child. He denies that he took the child on the 23rd day of March without the consent of petitioner.

The court, after hearing evidence, made findings of fact and conclusions of law, the essential parts of which may be summarized as follows: That the petitioner, the plaintiff in the

divorce action, had continuously been a resident of Seattle, Washington, for more than one year immediately preceding the commencement of the divorce action; that the property settlement agreement was made in which it was agreed that petitioner should have the care, custody and control of the child and that the Washington decree so provides; that there was no evidence showing a change of circumstances or conditions since the rendition of the Washington decree; that the child, by arrangement between the petitioner and her mother, Mrs. Charles Tidwell, has lived and been domiciled in the state of Montana for all of her life with the exception of the time between the latter part of January, 1946, and the latter part of March, 1946; that the child by her actions and words in open court demonstrated her strong and unusual affection for her maternal grandmother and constantly sought her company in preference to all others; that Mrs. Charles Tidwell is a well-qualified and fit and proper person to care for the child as she has done in the past and expressed her willingness to care for her.

The court made conclusions of law to the effect that the Washington court had jurisdiction over both parties to the divorce action and that the jurisdiction was acquired without fraud by either party and that the decree is entitled to full faith and credit; that there has been no change in the circumstances or conditions of either party since the entry of that decree; that the best interests of the child will best be served by granting the prayer of the petitioner and directing that the child be left by her mother in the care of Mrs. Tidwell. The decree directed that the child be taken from the custody of the defendants and "restored to the custody of the petitioner Marguerite Jane Talbot in accordance with the said Washington decree."

The court further ordered that "until further order by the said Washington court or by this court, the petitioner, Marguerite Jane Talbot, is directed to leave, as she has done in the past, said minor child in the care of Mrs. Charles Tidwell

of Ravalli county, Montana.'' Defendant questions the right of the court to take the custody of the child from him and award it to the maternal grandmother without a showing that he is unfit to have the custody. The fallacy of this contention rests in the fact that the court did not award the custody of the child to the maternal grandmother. The court simply gave full faith and credit to the Washington decree awarding the custody to the mother and directed that the mother should leave the child with Mrs. Tidwell as her agent. This court has recognized that this may be done in the case of In re Thompson, 77 Mont. 466, 251 Pac. 163, and Kelly v. Kelly, 117 Mont. 239, 157 Pac. (2d) 780. Hence, in legal effect, the legal custody of the child is in the petitioner and Mrs. Tidwell is simply holding the child as agent for petitioner.

Defendant next contends that the Washington court had no ▇ jurisdiction of the action because the plaintiff in the divorce action was not a bona fide resident of the state of Washington. Defendant relies upon the proposition that the husband has the right to fix the residence and domicile of the wife; that such residence and domicile was in Ravalli county, Montana. We do not agree that the wife may not under any circumstances establish a separate residence or domicile from that of her husband. Restatement on Conflict of Laws, sec. 28. It was competent for Mrs. Talbot, the petitioner herein, to establish a bona fide residence in the state of Washington under the circumstances here shown. She thought it desirable to seek employment without the state of Montana and did so. So far as the record before us is concerned she may have done so with the consent and approval of her husband. She has actually resided in Washington for more than three years continuously and states that it is her purpose not to return to Montana. Both the Washington court and the court below found that petitioner was a bona fide resident of the state of Washington at the time of filing the complaint in the divorce action. The lower court was warranted in finding that defendant did not sustain the burden which rested upon him to

show that plaintiff was not a bona fide resident of Washington when the divorce action was commenced. Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366; Esenwein v. Pennsylvania ex rel. Esenwein, 325 U. S. 279, 65 S. Ct. 1118, 89 L. Ed. 1608, 157 A. L.·R. 1396. Those cases have application to a case where there was substituted service. If we assume that they apply where there was personal service on defendant, as here, the burden of proof would still be on the party asserting non-residence. Whether the plaintiff's residence in Washington was actually litigated in the divorce action within the rule of Davis v. Davis, 305 U. S. 32, 59 S. Ct. 3, 83 L. Ed. 26, 118 A. L. R. 1518, we cannot determine from the record before us for the reason that the only matter before us concerning the proceedings in the divorce action is a copy of the decree. If the question of residence was litigated therein, that might furnish an additional reason for sustaining the trial court's conclusion.

Defendant next contends that the Washington court was ▆▆ without jurisdiction to make an adjudication regarding the custody of Lowetta because of the fact that the child was not within the jurisdiction of the state of Washington either at the time of filing the complaint or at the time of the rendition of the decree. He relies upon the case of Thrift v. Thrift, 54 Mont. 463, 171 Pac. 272, but in that case it should be noted that the defendant and the child involved were residents of the state of Indiana and the service of summons was made by publication and there was no appearance by the defendant before the trial. In this case there was personal service of the defendant within the state of Washington where the action was pending and defendant appeared and made defense in the action. The importance of these facts is well pointed out in Boens v. Bennett, 20 Cal. App. (2d) 477, 67 Pac. (2d) 715. The Washington court had jurisdiction of both the father and the mother. They had agreed that the custody of the child should be awarded to the mother. That agreement was apparently made with the idea and purpose that it would be used in the

174

divorce action. It was actually used in that action as shown by the court's decree.

A somewhat similar case is that of Roberts v. Roberts, 300 Ky. 454, 189 S. W. (2d) 691. In that action after the issues had been joined in a divorce action in Kentucky, brought by the husband, and after proof had been taken and the cause submitted for final determination, the wife went to Ohio, taking with her their minor daughter. The court in speaking of the jurisdiction of the court to make an award of the custody of the child said: "Mrs. Roberts employed counsel who filed pleadings for her, cross-examined the husband's witnesses and joined in the motion for a final determination of the cause. As a matter of fact, Mrs. Roberts and her daughter were present when the husband's depositions were being taken. As pointed out in 14 Am. Jur., "Courts," section 195, when jurisdiction once attaches, it is not lost by the removal of the defendant from the jurisdiction. Mrs. Roberts and the child were within the jurisdiction of the Perry Circuit Court, and, as we have noted, she actually participated in the cause. It is our view that once jurisdiction attached, as it clearly did in this instance, the Perry Circuit Court had the power to determine finally all the issues involved in the cause. To hold otherwise would make it virtually impossible to arrive at a final determination of the custody of a child in a divorce proceeding, because all that the party who had the custody of the child would have to do would be to remove the child from the jurisdiction of the court before judgment was entered, even though the issues had been joined, proof taken and the cause submitted."

The rule is not inflexible that the court will never award the custody of a child who at the time of the adjudication is physically without the jurisdiction of the court. Wear v. Wear, 130 Kan. 205, 285 Pac. 606, 72 A. L. R. 425; Hughes v. Hughes, Or., 178 Pac. (2d) 170; State v. Rhoades, 29 Wash. 61, 69 Pac. 389; Stephens v. Stephens, 53 Idaho 427, 24 Pac. (2d) 52; Maloney v. Maloney, 67 Cal. App. (2d) 278, 154 Pac.

(2d) 426; Anderson v. Anderson, 74 W. Va. 124, 81 S. E. 706; and see 27 C. J. S., Divorce, sec. 303, page 1164.

If the defendant was induced to sign the agreement by coercion or other improper methods or if after signing the agreement he learned of conditions affecting the mother's fitness to have the care and custody of the child, it was his duty to repudiate his agreement because of those conditions in the court wherein the agreement was intended to be used, namely in the Washington court, particularly where, as here, the facts relied upon were learned long before the action was tried and the decree entered.

As before noted, we do not have before us the proceedings before the Washington court. It is our view that under the circumstances here present the Washington court had jurisdiction to honor the stipulation of the parties respecting the custody of the child although the child was then absent from the state of Washington. The Washington court having jurisdiction, the lower court was right in giving full faith and credit to its decree. State ex rel. Nipp v. District Court, 46 Mont. 425, 128 Pac. 590, Ann. Cas. 1916B, 256. Were we to say otherwise we still think that we should not interfere with the discretion of the trial court in awarding the custody to the mother as here. The mother through her agent, Mrs. Tidwell, has had the custody of the child ever since its birth and even though the father is a fit and proper person to have its custody we would hesitate to interfere with the discretion of the trial court in the absence of a finding that the mother is not a fit and proper person to have the care and custody.

The judgment and order appealed from are affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Cheadle and Metcalf concur.