Stella L. Carman KENNEDY, Plaintiff-
Appellant,

v.

Leonard E. CARMAN, Defendant-
Respondent.

No. 25398.

Kansas City. Court of Appeals,
Missouri.

Sept. 22, 1971.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Sept. 23, 1971.

Dennis G. Muller, Muller & Muller, Kansas City, for plaintiff-appellant.

None, for defendant-respondent.

CROSS, Judge.

Plaintiff and defendant are, respectively, the mother and father of Joseph Lee Carman, a male child born to them in wedlock on February 22, 1962. After a prolonged separation their marriage was dissolved on September 10, 1968, by a decree of divorce entered in the Superior Court of Creek County, Oklahoma. That judgment awarded the boy's custody to defendant, his father, and gave plaintiff, (his mother), certain visitation privileges. Thereafter plaintiff took the child to Missouri for visitation, refused to return him to his father in Oklahoma, and filed this suit as a proceeding in equity, seeking a Missouri court's award of the child's custody to herself instead of to his father. In her petition she claims entitlement to that relief on allegations that there were changed conditions since the original decree such that it would be for the best interest and welfare of the child that his custody be awarded to her, the mother. She further charges that defendant is not a fit person to have the child's full time custody.

At the time plaintiff filed this action, she was domiciled in Missouri. Defendant, still domiciled in Oklahoma, was notified of the suit by "Summons Upon Service by Mail". However, he entered personal appearance and filed answer generally traversing plaintiff's petition. Additionally he filed a cross-petition (characterized by plaintiff in her brief as a "cross petition in habeas corpus") seeking restoration of the boy's custody to himself. In that pleading he alleged that plaintiff was unlawfully restraining and withholding the boy from him in violation of the terms of the Oklahoma decree, which had finally determined the custody question in his favor, and prayed

that the court forthwith restore to him the child's "physical custody, control and care".

Upon trial, the court gave full hearing on the petition and cross-petition. A transcript of the Oklahoma divorce proceedings introduced in evidence shows that defendant father (who filed that suit as plaintiff) and the child were domiciled in Oklahoma, that the mother was personally served with summons in Oklahoma, and that both parties appeared at the trial in person and by counsel and fully contested the issues. At the conclusion of the divorce trial the court stated orally: "I don't think the child is going to be injured, by going with the mother or going with the father or staying there. * * * But I am going to rule that the child will stay with the father and that at Christmastime, if the mother wants this child, she should have him for a week or so, and whatever time in the summer she wants him, and we will let the child stay with the father during the school year. * * * Thanksgiving or Christmas and in the summertime, if she wishes to have him, that is up to her * * * it is obvious to me the child is being taken care of now and I am sure if it was the other way and during the summer whenever she had the child, it will be well taken care of." The divorce decree recited as a preliminary finding that "the parties hereto have been separated for over three years, and that the parties hereto are incompatible and their marriage relationship heretofore existing has been completely destroyed with no possibility of reconciliation and that both parties are equally at fault and each is entitled to a divorce from the other." Accordingly, each of the parties was granted "an absolute and final divorce from the other." The custody provision of the divorce decree is as follows: "IT IS FURTHER ORDERED by the Court, that the plaintiff, (defendant here) be awarded the absolute and exclusive care and custody of the minor children born to this marriage, Joseph Lee Carman, and that the defendant (plaintiff here) be awarded the right of reasonable visitation with said minor child. Defendant is further awarded the temporary custody of said minor child during the summer months and on holidays; the period of temporary custody to be agreed upon between the parties hereto."

A considerable portion of the evidence heard in the present case related to the conduct of the parties prior to rendition of the divorce decree. Such evidence was material only to the merits of the action for divorce and will not be considered in this action, since our concern is only with conditions and circumstances arising since the original decree.

Plaintiff testified (in this case) that at the time the Oklahoma divorce was granted she "was living in Indiana". She had gone to Oklahoma to appear for the divorce case hearing and stayed at a motel in Tulsa thirteen days before the decree was rendered. Subsequent to the decree of divorce, she returned to Indiana where she stayed two weeks. Thereafter on September 30th, 1968, she moved to and became employed in Tulsa, Oklahoma. On December 13, 1968, she left Oklahoma and returned to Indiana to care for her ill mother. Prior to that time she had secured visitation with her son several times. On January 1, 1969, plaintiff moved to Kansas City, Missouri. She married William L. Kennedy, her present husband, on March 14, 1969, and at the time of the trial was living with him at a Kansas City address. Defendant also remarried on March 14, 1969. On May 17th, 1969, at the end of Joseph's school year in Oklahoma, defendant surrendered temporary custody of the boy to plaintiff for summer visitation at her home in Kansas City in accordance with provisions of the divorce decree. Defendant testified that plaintiff agreed to have Joseph back by the 17th of July so that the boy might be with his father whose vacation began on that date. Plaintiff denied that she made such promise, but admitted it was her understanding that

she was going to return the child at the end of the summer "obedient to the decree". That "understanding" was dishonored by her failure and refusal to return the boy in defiance of the subsisting decree and her commencement of this suit on August 8, 1969.

Both parties adduced evidence to the effect that they were fit and suitable persons to have Joseph's custody and were able to properly provide and care for his needs and nurture. Neither party produced any proof that the other was not a suitable custodian. As to any "changed circumstances" on which plaintiff bottomed her petition, the evidence discloses none of substance other than the remarriage of both parties. At the conclusion of the evidence the trial court made oral remarks as follows:

"Gentlemen, I'm constrained to hold that full faith and credit should be given to the Oklahoma decree. I can't see anything else. This child, in spite of what you say is domiciled in Oklahoma. I think he is here under the very—in accordance with that decree in Oklahoma. * * *

"I have considered this very carefully and I don't even want to express my opinion about the relative merits of the homes which seems to me, the evidence is clear, they are both—neither is unfit to have the child but I think if there is to be a change in custody, it should be in the Oklahoma Court, which originally granted the decree and awarded the custody. * * *

"The child is remanded to the custody of the petitioner under the Writ of Habeas Corpus, to Mr. Leonard E. Carman."

Written findings of fact by the trial court include the following:

"5. Plaintiff herein and defendant herein both appear to the court to be fit persons to have custody of Joseph Lee Carman, their minor child, and their circumstances and conditions of life as such custodians appear to the Court to be approximately equal;

6. The health and welfare of said minor child would not be jeopardized or impaired were his custody remanded to defendant herein, Leonard E. Carman, * * *"

The trial court entered conclusions of law as follows:

"1. The aforementioned Decree of Divorce dated September 10, 1968, made and entered by the Superior Court of Creek County, State of Oklahoma, Bristow Division, is a final and valid judgment, decree and order made by a court of competent jurisdiction and on September 10, 1968, said Court had jurisdiction over the subject matter and the parties involved in the aforesaid suit there pending, Leonard E. Carman, plaintiff vs. Stella L. Carman, defendant, cause No. 3170–D;

2. Said decree of September 10, 1968, is entitled to full faith and credit in this Court and under the facts and the applicable law, this court is precluded from awarding custody otherwise than in accordance with said decree awarding the exclusive care and custody of Joseph Lee Carman to defendant.

3. The court does not have jurisdiction of plaintiff's claim to change custody and defendant is entitled to the relief prayed for in his counter-claim."

The judgment entered in this cause reads as follows:

"THEREFORE, it is now by the Court ORDERED, ADJUDGED AND DECREED that custody of Joseph Lee Carman should be forthwith remanded to his father, Leonard E. Carman, and plaintiff herein is ordered forthwith to surrender and to return said child to the custody, care and control of the defendant herein, Leonard E. Carman, and plaintiff's petition is dismissed for want of jurisdiction."

■ Plaintiff utilizes two points of her brief to contend that the trial court erred in its disclaimer of jurisdiction. In her first point it is argued that notwithstanding the full faith and credit provision of the federal constitution, the Oklahoma decree was conclusive only as to circumstances and conditions existing at the time of its rendition, and that the Missouri court, upon a showing of changed conditions arising thereafter, which in the interest of the child's welfare would justify a different award, was not precluded from taking such action. Plaintiff's position on this point is supported by most courts, including those of this state. See 4 A.L.R.2d 7, Annotation, Jurisdiction to Award Custody of Child Having Legal Domicile in Another State. In the leading and frequently cited Missouri case, In re Leete, 205 Mo.App. 225, 223 S.W. 962,[1] the court held as follows: "We are not, of course, precluded from making an award of custody inconsistent with a foreign decree, based upon matters arising subsequent thereto, if the best interests and welfare of the children, which is the paramount consideration, should warrant such course." To the same effect, this court stated in Daugherty v. Nelson, 234 S.W.2d 353: "Even in the face of a valid existing custody decree rendered by a court of a sister state, a court may, in a proper proceeding, make an award of custody provided changed conditions are shown to exist that in the interest of the child's welfare justify an award changing the child's legal custody, at least where the law of the state in which the decree was rendered permits the matter of the custody of the child to be reconsidered in the light of changed conditions." Also see Ex parte Lofts, Mo.App., 222 S.W.2d 101 and Wood v. Wood, Mo.App., 231 S.W.2d 882. We accept the legal principles posited in plaintiff's first point as correct.

Plaintiff submits in her second point that even though the child may have been domiciled in Oklahoma, the Missouri court had jurisdiction to modify the foreign custody provision upon a showing of changed circumstances *because both parties were personally before the court and the child was physically within the state.*

The authorities are said to be in "hopeless conflict" as to the proper or sufficient basis of jurisdiction to award custody of a minor child, and the many cases that have dealt with the question have left it in a state of confusion. Leflar in his Conflict of Laws says that "Child custody decisions afford no better than a quicksand foundation for analysis of jurisdiction." Several theories, generally accepted as three, have been advanced by legal writers and followed by the courts as to the valid basis for jurisdiction over the subject matter of a child custody proceeding. This court has previously noted them in Daugherty v. Nelson, Mo.App., 234 S.W.2d 353 and in In re Rice, Mo.App., 316 S.W.2d 329. According to one theory, commonly referred to as the "domicile theory" the question of custody is simply one of "status", and as such subject to control only by the courts of the state where the child is domiciled. This view was asserted by the 1934 (original) Restatement, Conflict of Laws, Section 117. Another theory treats the problem as one involving conflicting claims of the parents for custody of their child, and authorities following that theory have held that in personam jurisdiction over the parents is sufficient. A third theory considers that physical presence of the child within the state is sufficient to give the court jurisdiction to make the custody award—this on the ground that the court's basic problem is to act in the best interest of the child and that the court most qualified to

---

1. In re Leete, 205 Mo.App. 225, 223 S.W. 962 is cited as authority for the rule stated in 24 Am.Jur.2d Divorce and Separation, Section 1000, p. 1140 quoted as follows: "While the judgment of a divorce court concerning custody is res judicata of the issue as of the time of the adjudication, another state may make a new order where the circumstances have changed and the welfare of the child will be promoted by the modification."

do so is the one having access to the child.[2] As we observed in In re Rice, supra, this view is supported by the leading and frequently cited case of Finlay v. Finlay, 1925, 240 N.Y. 429, 148 N.E. 624, 625, 40 A.L. R. 937. For a fuller statement of the theories above outlined, and citation of underlying authorities, see 9 A.L.R.2d 434, Annotation, Custody Award.

Missouri authority is meager, but it provides a sufficient (if not ideal) basis for our determination of the point considered. The pivotal Missouri decision is Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W. 2d 566 (affirming Beckmann v. Beckmann, Mo.App., 211 S.W.2d 536). In that case plaintiff, mother of the children concerned, sued for divorce after defendant father had fled the state, taking the children with him. Service was by publication. In special appearance to challenge the court's jurisdiction, defendant admitted his absence from the state was temporary. Plaintiff mother was granted a divorce, custody of the children, and alimony and maintenance awards. Both the St. Louis Court of Appeals in the first instance and the Supreme Court, on transfer, disallowed the money awards granted on constructive service, but upheld the trial court's jurisdiction to award custody of the children. Both appellate courts ruled the custody question specifically on authority of the 1934 Restatement—that is, on the theory that under circumstances shown, defendant had not changed his Missouri domicile, and that since the children were in his physical custody, his domicile was theirs. On that premise the two reviewing courts reasoned (under the Restatement rule) that the "status" as to their custody was a "res" within the jurisdiction of the Missouri court because they were Missouri domiciliaries. However, it is apparent from their respective opinions that both courts desired not to be understood as basing child custody jurisdiction solely on the domiciliary theory. The St. Louis Court of Appeals used explicit language to acknowledge that in personam jurisdiction over contesting parents conferred jurisdiction to determine the issue of child custody. Referring to Laumeier v. Laumeier, 308 Mo. 201, 271 S.W. 481, where the Supreme Court, en banc, affirmed a judgment of the circuit court awarding custody of a child domiciled in New York on the basis of the Missouri court's personal jurisdiction over the parents, the St. Louis Court of Appeals stated (211 S.W.2d 1. c. 540–541):

> "It would seem, therefore, that under the above case a divorce court in this state may determine the matter of custody of a child who is not within the jurisdiction of the court, and who is not domiciled within the state, if the person who has actual custody of the child is before the court either by personal service of process or by general entry of appearance. * * * Jurisdiction to award custody is a function of the state wherein the children are domiciled, except where both parents are personally before the court seeking an adjudication, on the theory that their personal rights are involved."

The Supreme Court Beckmann opinion implied ruled what the St. Louis Court of Appeals had held, by stating (218 S.W. 2d 1. c. 569):

> "The rule has been announced with good authority that a court may not award custody of a child *where it has no jurisdiction of the person of the defendant* and the child is not within the state." (Emphasis supplied.)

2. "The majority of the jurisdictions hold to the view that even though there is a valid foreign custodial decree outstanding, the court, as the state's agency exercising the prerogatives of parens patriae, has power to award custody of a child domiciled elsewhere and only temporarily within the state, even if the child has been taken into the state in contravention of a judgment or injunction order against removal from the foreign state or in contravention of visitorial rights contained in the judgment." 4 A.L.R.2d 7, 1. c. 55, Annotation, Custody of Child—Jurisdiction.

Subsequent Missouri decisions do not interpret the Beckmann case as having held that domicile of the child is the *sole* criterion of custody jurisdiction. In Daugherty v. Nelson, Mo.App., 234 S.W.2d 353, this court said:

"While the Missouri decision in the Beckmann case, supra, is based on the domicile theory, it cannot be stated with certainty that our Supreme Court has made an exclusive choice between the theories which have been developed to determine the basis for jurisdiction in such cases."

After stating the three theories we have mentioned above, the opinion continues:

"It should also be noted that in most of the cases which stress either the second or the third theory (referring respectively to the theories founded on personal jurisdiction of the parents and the theory of jurisdiction based on the child's physical presence within the state), the court had jurisdiction in personam over both parents, and the child was actually living in the state although domiciled elsewhere. When that is the case, it is apparent that either of the last mentioned theories is applicable."

Again, in In re Rice, Mo.App., 316 S.W.2d 329, this court commented to the same effect. Referring to the Beckmann decision, we said:

"Our Missouri courts have apparently determined these questions primarily upon the basis of domicile of the child although not disclaiming jurisdiction based on the child's physical presence within the state."

Later, in Weiler v. Weiler, Mo.App., 331 S.W.2d 165, the St. Louis Court of Appeals directly ruled what its Beckmann opinion had stated as dictum—that a court with personal jurisdiction over both parents has jurisdiction to award custody of a child neither present nor domiciled in the state. In the Weiler case, the defendant wife and the child of the parties were both domiciled in Illinois. The plaintiff husband sued for divorce in Missouri and defendant answered to the merits. The circuit court awarded plaintiff a divorce and custody of the child. Affirming the judgment and upholding the trial court's jurisdiction to make the custody award, the St. Louis Court of Appeals held not only that the result reached was consistent with the two Beckmann opinions, but in fact relied upon the Beckmann opinion it had previously written, as authority for its decision. The Weiler opinion concludes:

"It appears logical that the court having jurisdiction over both parents should have jurisdiction to determine and to award the custody of their children. A multiplicity of suits would otherwise result, and the best interest of the children would not thereby be served. This theory finds support in numerous jurisdictions. Smith v. Smith, 138 W.Va. 388, 76 S.E.2d 253; People ex rel. Scanlon v. Ciaravalli, 2 A.D.2d 702, 152 N.Y.S. 2d 494; Talbot v. Talbot, 120 Mont. 167, 181 P.2d 148; McGraw v. McGraw, 266 Ala. 548, 97 So.2d 897; Wilson v. Wilson, 66 Nev. 405, 212 P.2d 1066."

Under the view thus established in this state—that when a court has in personam jurisdiction over the parents it also has jurisdiction to award custody of a child, irrespective of his domicile or residence,—it would not be consistent to say that the court was without jurisdiction in this case, where not only were the parents before the court in person, but additionally the child concerned was residing in the state and physically before the trial court.[3]

3. Professor Leflar comments in The Law of Conflict of Laws as follows: "It seems desirable to hold that the custody of the child involves personal rights and duties separable from the parent-child status, which may be a res having a situs only at the domicile, so that the custody may properly be awarded by any court having personal jurisdiction over both parents and the child."

Even on the basis of the latter factor alone, there is Missouri authority, at least implied, that the court could have exercised its inherent equity jurisdiction, on behalf of the state as parens patriae, to inquire as to the fitness of defendant father to have custody of the child whose physical presence had been submitted to the court, and to take such action as in the sound discretion of the court, was necessary to protect the child's welfare. See Ex parte Badger, 286 Mo. 139, 226 S.W. 936; In re Rice, Mo. App., 316 S.W.2d 329.[4] It cannot be questioned that the state can exercise "the right of sovereignty to protect and promote the welfare of both society and of the individual members thereof within its borders." Goldsmith v. Salkey, 131 Tex. 139, 112 S.W. 2d 165, 116 A.L.R. 1293.[5] Whether the trial court was necessarily constrained to exercise its jurisdiction in the present action is still another question.

At this juncture we deem it appropriate to note that the American Law Institute original Restatement, Conflict of Laws, pertaining to jurisdiction to award custody (upon which Missouri courts have heretofore relied) has undergone radical revision for republication as Restatement, Second, which at present is in final proof form, copy of which is at our hand. The revision is the result of many years study and collaboration by a committee of leading American authorities, including the eminent Missouri jurist, Laurance M. Hyde. As such, it reflects very substantial change in the views taken by many courts, and material developments resulting from decisions rendered since the 1934 Restatement. Original Section 117, which declared that only the state of the child's domicile had jurisdiction to award custody,[6] has been deleted and is supplanted in Restatement, Second, Conflict of Laws, Chapter 3, by a new Section 79, quoted as follows:

"Sec. 79. Custody of the Person.

A state has power to exercise judicial jurisdiction to determine the custody, or to appoint a guardian, of the person of a child or adult

(a) who is domiciled in the state, or

(b) who is present in the state, or

(c) who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the state."[7]

Extensive Comment follows the text of Section 79, rationalizing its origin, justifying its adoption and explaining its effect.

4. Commenting upon In re Rice, in an extensive article entitled The Status of the Missouri Law in the Troubled Area of Child Custody, Vol. 27, Missouri Law Review 406, Messrs. Lewis and Tockman state: "It is submitted that the underlying philosophy of the Rice decision is that when a child is found within the physical jurisdiction of Missouri, our courts have a sufficient interest in the welfare of such child to hear and determine for themselves questions involving custody, notwithstanding the existence of a subsisting custody order rendered in another state."

5. See McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444 (1945); Sheehy v. Sheehy, 88 N.H. 223, 186 A. 1 (1936); Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624 (1925); Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876 (1948); Anno., 4 A.L.R.2d 7 (1949).

6. Referring to the 1934 Restatement (Sec. 117) and its disregard by the courts, Ehrenzweig in 51 Mich. Law Review 345, 1953, commented: "Thus it might seem that little attention is being paid to the rigid Restatement formula and that courts have in fact exercised their free discretion in the paramount intent of the child's welfare, while paying lip service to the (original) Restatement."

7. It is acknowledged in the Reporter's Note following Section 79 that: "The black letter rule and the Comments follow closely the reasoning of Justice Traynor in Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739 (1948). Justice Traynor's groundbreaking opinion has proved to be the most influential in the area." Numerous additional supporting authorities are also cited.

As to the availability of each of the three bases of jurisdiction recognized and the resulting possibility of multiple concurrent jurisdiction, the Comment states:

"In point of fact, each of these (three) bases of judicial jurisdiction provides a reasonable and suitable basis upon which a court may proceed in a proper case. The state in which the child is physically present must have power to take the necessary steps for his protection; the state which has personal jurisdiction over those competing for the custody provides a convenient forum in which to try the issue; and lastly the state of the child's domicil will normally have the greatest concern with his welfare. As a result, there will be situations where three states have concurrent judicial jurisdiction: namely, the state of the child's domicil, the state where he is physically present at the time of suit and the state which has personal jurisdiction over those (normally the parents) who are competing for his custody."

Counseling that jurisdiction should be exercised with restraint and only when necessary in the interest of the child's welfare, the Comment continues:

"This is not to say, however, that a court which has jurisdiction on any one of these bases will necessarily entertain the suit. A court of the state of the child's domicil will usually do so because of the obvious interest of this state in the child's welfare. On the other hand, a court of a state where the child is only physically present at the time will refuse to entertain the action unless it believes this to be necessary for the best interests of the child. A suit may likewise be dismissed if the court has reason to believe that its decree would not be effective as might be the case if both the child and the defendant parent are in another state."

The effect of a custody award rendered in other states is considered by the Comment to be as follows:

"Full faith and credit does not require that a custody decree be accorded greater effect in a sister State than it enjoys in the State of rendition. If the decree remains subject to modification because of changed conditions in the State of rendition, as will almost invariably be the case, the decree will similarly be modifiable in sister States. New York ex rel. Halvey v. Halvey, 330 U.S. 610 [67 S.Ct. 903, 91 L.Ed. 1133] (1947). For this reason, custody decrees do not enjoy the same extraterritorial effect as do unmodifiable judgments. At the least, the courts of the sister State will determine whether the custody provisions of the decree stand in need of modification because of changed conditions.

"The welfare of the child is always the overriding consideration. For this reason, probably the majority of courts have not felt themselves bound by full faith and credit, even in the absence of changed conditions, to enforce without question the provisions of a custody decree rendered in another State. As a matter of policy, such decrees will frequently not be reexamined when a parent who is dissatisfied with the first award, brings the child into the State of the forum for the sole purpose of obtaining a redetermination of the custody issue. In other situations, the courts have evinced little hesitation in reexamining the decree and in rendering a new one of their own when this was believed necessary for the best interests of the child." [8]

It is our opinion that the bare text of Restatement, Second, Section 79, (the "black letter rule" as it is termed by its authors) does not run counter to Missouri decisions, and that it does not promulgate rules of jurisdiction that have not heretofore been recognized or applied by Missouri

---

8. See extensive citation of cases in Reporter's Note following Comment on Section 79, Restatement, Second.

courts. Insofar as this state is concerned, the new Restatement's rule is in reality a pronouncement of standards our courts have already declared or implied to be applicable in determining child custody jurisdiction. However, the Comment following Section 79 enunciates certain concepts of child custody jurisdiction, based on authoritative legal writings and developed by recent decisions in sister states, which have not yet been articulated by Missouri courts. Limitation of space in this opinion precludes a full discussion of these authorities, but we undertake to state in substance the trends of recent legal studies and court decisions which underly Restatement, Second.

The courts are in unanimous agreement that the welfare of the child is the prime consideration in regulating its custody. In recent years this overriding principle has tended to temper the harsh rule of res judicata and discourage a legalistic resolution of the jurisdiction question by mechanically applying rigid rules or dogmatic formulas. It is now generally considered that such an approach does not subserve the child's best interest. "Most of the inconsistencies and conflicts in this field are the result of the judges' struggle to adapt the older rigid conceptions of jurisdiction based on domicile (which were never very well conceived even in the context of a simpler society) to a contemporary society characterized by an extremely mobile population given to frequent and bitter controversies over custody." Clark, Divorce, Alimony and Custody, p. 322. As stated by Professor Stumberg, following a careful analysis of the case law, "technical concepts of jurisdiction based on domicile and upon theoretical interest by a state in its own domiciliaries seem far removed from problems of child welfare." [9] Likewise, the view that custody decrees of sister states are entitled to full faith and credit has undergone material erosion, as we shall later outline more fully.

It is acknowledged that the principal difficulty with each of the three recognized theories as exclusive tests of jurisdiction is the difficulty inherent in any attempt to apply hard and fast rules of res judicata and conflict of laws to the problem of child custody. 9 A.L.R.2d 441, Annotation; Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739. In a summation of the cases, 9 A.L.R.2d 623, 626, Annotation, concludes: "(I)t would appear that, in order to safeguard the welfare of the child and the social interests involved, the trend is to permit the courts a large degree of judicial discretion, unhampered by the application of formal rules of res judicata, the issue in each case being the welfare of the child at the time, and previous decisions of that question being of persuasive rather than binding force." It is pertinently stated by Ehrenzweig, in his Conflict of Laws, p. 286, that "Custody decrees cannot be treated like other judgments for purposes of recognition. Such decrees are subject to change at any time, in accordance with changing requirements of the child's welfare. Moreover, the settlement of a dispute between hostile spouses cannot be binding on the child who has lacked independent representation in these proceedings. The primary principle in this field should be, therefore, and is in fact, the court's discretion exclusively governed by consideration for the child's welfare. Neither full faith and credit nor comity can be expected or given at the expense of this discretion."

A significant departure from traditional treatment of the child custody jurisdiction question resulted from Justice Traynor's "ground breaking" opinion in Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739. Noting that the three conventional theories of jurisdiction are based on the assumption that in order to achieve "finality", one court at one given time must have exclusive jurisdiction, the Sampsell

---

**9.** Stumberg, "The Status of Children in the Conflict of Laws", 8 Univ. Chicago Law Review 42 at 62 (1940).

opinion expresses doubt that the best interest of the child is thereby served, cites authority for the proposition that courts of two or more states may have concurrent jurisdiction over custody of a child,[10] and concludes:

"In the interest of the child, there is no reason why the state where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why other states should not also have jurisdiction. As stated by Justice Cardozo in Finlay v. Finlay, 240 N.Y. 429, 431, 148 N.E. 624, 625, 40 A.L.R. 937, 'The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. Woodworth v. Spring, 4 Allen (Mass.) 321, 323; White v. White, 77 N.H. 26, 86 A. 353; Hanrahan v. Sears, 72 N.H. 71, 72, 54 A. 702; Matter of Hubbard, 82 N.Y. 90, 93. For this, the residence of the child suffices, though the domicile be elsewhere.'

\*　　\*　　\*　　\*　　\*　　\*

"Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there. On the other hand, if the jurisdiction of one state has been exercised over the child, there is no reason why, if the welfare of the particular child is a matter of real concern to the courts of another state, those courts may not also have jurisdiction, which might be exercised in the interest of the child 'with respectful consideration to the prior determination of other courts similarly situated.' Stansbury 10 Law and Contemp. Problems, supra, at 830–831." (Citing cases.)

The multijurisdiction standard thus pioneered by Sampsell is also approved by 9 A.L.R.2d 434, 1. c. 441, Annotation, in this language:

"From a standpoint of expediency and of achieving socially desirable ends, there seems to be only one argument in favor of confining jurisdiction to a single state: that it will produce stability and discourage the crossing of state lines to avoid the effect of unpalatable custody decrees."[11]

"It is doubtful, however, whether the best interests of the child, the paramount consideration in custody proceedings, is served thereby. There is authority for the proposition that courts of two or more states may have concurrent jurisdiction over the custody of a child and to this writer this seems the best solution of the question."

Later decisions in which the Sampsell doctrine has been adopted and applied include Casteel v. Casteel, 45 N.J.Super. 338, 132 A.2d 529; Wallace v. Wallace, 63 N.M. 414, 320 P.2d 1020; Alves v. Alves, D.C.App., 262 A.2d 111.

The view that courts of more than one state may have concurrent jurisdiction in child custody situations is necessarily at odds with the concept that sister states must reciprocally give full faith and credit to custody decrees, since assumption of jurisdiction by a forum state, in the face of an existing custody decree by a render-

10. Stansbury, Custody and Maintenance Law Across State Lines, 10 Law and Contemp.Prob. 819, 830; Finlay v. Finlay, 240 N.Y. 429, 431, 148 N.E. 624, 40 A.L.R. 937; Goldsmith v. Salkey, 131 Tex. 139, 145–147, 112 S.W.2d 165, 116 A.L.R. 1293; Stafford v. Stafford, 287 Ky. 804, 806, 155 S.W.2d 220.

11. Citing Stansbury, Custody and Maintenance Law Across State Lines, 10 Law and Contemp. Prob. 819.

ing state (when not exercised on the basis of changed circumstances) would constitute non-recognition of the full faith and credit clause of the federal constitution. As a matter of recorded fact the United States Supreme Court has not furnished any guidance on this bruited question. In four cases that court has avoided the issue and remains inconclusive as to whether a custody decree is entitled to full faith and credit in a sister state. Those cases are: New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962) and Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1957). Majority opinions and dissents reflect the court's divisions. The May case, notwithstanding the court's irresolution of the issue, was productive of a statement, by way of dictum, that is basically germane to the question. In the May case, Justice Frankfurter said:

"Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children. * * * (T)he child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time."

Again, in Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008, where the court for the first time "explicitly" reserved the issue for future consideration, Justice Frankfurter expressly rejected full faith and credit in another dissenting opinion. Eminent legal writers have also inveighed against it. Ehrenzweig, in his Conflict of Laws, Part One, p. 286, ex-

pressed hope that "the court will yet approve what appears as a clear trend against full faith and credit and for full discretion." In the same vein, Professor Clark stated in his treatise, Divorce, Alimony and Custody, p. 324: "Fortunately perhaps, in view of May v. Anderson, the Full Faith and Credit Clause is of relatively slight importance in custody cases."

On the state level, jurisdictions where courts flatly hold or indicate that custody decrees are not entitled to full faith and credit include: New York, Arizona, Colorado, Connecticut, District of Columbia, Kansas, Louisiana, Massachusetts, Nevada, North Carolina, Pennsylvania, Texas and Washington.[12] Worthy of note here is the following statement by Messrs. Lewis and Tockman, quoted from their extensive article on child custody found in Vol. 27 Missouri Law Review, p. 435:

"Decisions in Missouri and recent decisions of the Supreme Court of the United States with regard to the applicability of the full faith and credit clause to custody awards seriously challenge the validity of this underlying assumption, demonstrating that it is misplaced, if not completely unrealistic."

Authorities which advocate or accept the doctrine that several states may have concurrent jurisdiction to regulate child custody are in agreement that courts invested with such authority should exercise it with self restraint, due respect for foreign decrees and conscientious adherence to the doctrine of comity. Speaking of the "Sampsell—Second Restatement Position", Professor Ratner in his comprehensive article "Child Custody in a Federal System", 62 Mich. Law Review 765, says: "Custody decrees need not be given full faith and credit, but a state should give respectful consideration to the decision of another state and may enforce it on comity grounds." It is generally conceded that all states are interested in an orderly alloca-

12. For citation of recent cases see Reporter's Note, Restatement Second, Conflict of Laws, Sec. 79, p. 300.

tion of jurisdiction to the forum most capable of doing justice in child custody conflicts. "Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there. On the other hand, if the jurisdiction of one state has been exercised over the child, there is no reason why, if the welfare of the particular child is a matter of real concern to the courts of another state, those courts may not also have jurisdiction which might be exercised in the interest of the child with respectful consideration of the prior determination of other courts similarly situated." [13] 9 A. L.R.2d p. 442, Annotation.

Factors principally to be considered in allocating jurisdiction include convenience of the forum for the litigants and maximum access to the relevant evidence. Opinion has been expressed that "(J)urisdiction should be conferred on those courts presumably best informed of the conditions affecting the child's welfare." 53 Harvard Law Review 1025; and that "A court's access to the relevant evidence is increased when most of the witnesses and pertinent physical locations are in the vicinity of the court. * * *". Ratner, Child Custody in a Federal System, p. 809. The latter authority further suggests that issues resolved in a fair hearing should not be redetermined in another forum, since re-litigation is destructive of the emotional and environmental stability important to the child's welfare. Notwithstanding that logical assumption, and as practically all courts agree, the state where a child is physically present should have authority to protect it against mistreatment or abuse.[14]

■ Courts are frequently troubled by a particular type of case—that of the losing parent who, being dissatisfied with a custody award, removes the child to another state in violation of the court's order and there seeks a redetermination of the issue. Courts of some states have flatly refused to assume jurisdiction under those conditions on the ground that the petitioning parent, having defied the judgment of the first court, does not satisfy the criterion of "clean hands".[15] Although such policy may tend to deter interstate kidnapping and contempt for lawful decrees, it is subject to criticism on the ground that it does not take into account the best interests of the child, since the parent's wrong, by itself, should not preclude a court from acting in the child's behalf when his welfare so dictates, and thus react to his disadvantage. With complete polarity, certain other courts make no pretense of recognizing foreign decrees either on grounds of full faith and credit or comity, claiming complete authority to re-examine the merits of such decrees by "independent" investigation.[16] In the opinion of most authorities, neither of the policies above outlined represents either prevailing or desirable law. A median course would more fairly and effectively resolve the problem of allocating child custody jursidiction. A court

13. Citing Stansbury, 10 Law & Contemp. Prob. 830.

14. See Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1; McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396; Finlay v. Finlay, 240 N.Y. 429, 431, 148 N.E. 624, 625 (1925); Goldsmith v. Salkey, 131 Tex. 139, 145–147, 112 S.W.2d 165, 116 A.L.R. 1293; 4 A.L.R.2d 7, Annotation—Custody of Child—Jurisdiction; 160 A.L.R. 400, Annotation—Decree—Custody of Child—Effect; 116 A.L.R. 1299, Annotation—Decree—Custody of Child—Effect.

15. See Ehrenzweig, Conflict of Laws, Sec. 88, "The Rule: 'Clean Hands' ", p. 286 and cases cited.

16. See Ehrenzweig, Conflict of Laws, Sec. 88, "'Independent' investigation: the Kansas rule", p. 284, and cases cited.

with technical jurisdiction should act to determine the custody of a child when (a) the child's welfare might be jeopardized if the court failed to act, and (b) the situation of the child and the parties contesting for his custody is such that the court will be able to enforce its decree.[17]

In accordance with our earlier indication, we now finally rule, as plaintiff contends, that the trial court had jurisdiction in the present child controversy either by reason of the personal appearance of the litigant parents or the physical presence of the child before the court. With both of those conditions existing, the question no longer can be arguable. The term "jurisdiction" as here used means "the power of the court to act and lacking which its judgment is a nullity." 9 A.L.R.2d 436, Annotation. Being vested with such authority in this case, the trial court had a choice of two alternative courses of action. If, in its sound discretion, it deemed that intervention was necessary to protect the child's welfare and that his best interests would be served by entertaining and deciding the case on its merits, the court was empowered to do so. On the other hand, if the court believed on good cause that no threat to the child's welfare existed, and that Oklahoma, the state of his domicile, had a more substantial interest in his welfare and afforded a more convenient and effective forum for the controversy, the court could have declined to exercise its jurisdiction and dismissed the action *for those reasons.* We emphasize, however, that the trial court's dismissal "for want of jurisdiction" was not a proper course of action.

Anticipating that question may arise as to the duty of a court confronted with such a problem when asked to modify a custody decree rendered by a foreign court, we volunteer opinion that the merits of such a proceeding, whether it be an action in equity, habeas corpus, or in whatever form,

can not be summarily determined by a perfunctory examination of the pleadings. If a sufficient jurisdictional basis exists, and the petitioning suitor's pleading states on its face sufficient facts which, if true, would cause the court to be apprehensive or concerned for the child's welfare, we believe that the court should conduct some preliminary evidentiary hearing sufficient to determine whether jurisdiction should be exercised to reach a final determination of the case on its merits, or relinquished by dismissal so that jurisdiction could be assumed by the foreign court.

In her remaining point plaintiff reaches the merits of the case, contending that the boy's custody should have been awarded to her. As the court of review to which this appeal is addressed, we have jurisdiction to decide that question. There has been a full and complete trial participated in by both parties, with unlimited opportunity afforded them to present evidence. With the transcript of that trial before us, we believe no beneficial purpose or the child's best interest would be served by dismissing the cause without a decision on the merits,—particularly so, since we are encouraged by plaintiff to arrive at a decision.

In order for plaintiff to prevail in the controversy it was necessary for her to prove that changed circumstances had arisen, since the original decree, of sufficient substance to warrant belief that the child's welfare would be benefited by the custody change she sought. Missouri Digest, Divorce, ☞303(2). In our opinion plaintiff has not borne her burden of proof. As we have already pointed out, the only change in circumstances worthy of note is her remarriage. It is universally held that remarriage of one, or both, of the parents, is not, in itself, a controlling consideration or sufficient reason for changing custody of a child. 27B C.J.S. Divorce § 317, pp. 555–556; Baer v. Baer, Mo.App., 51 S.W.2d 873; Davis v. Davis,

---

17. See Clark, Divorce, Alimony and Custody, pp. 320–1, and cases cited in Note 15.

Mo.App., 254 S.W.2d 270; 43 A.L.R.2d 364, Annotation. Plaintiff argues that by reason of her remarriage she is in a "better position to now provide that superior care of which only a mother is capable." To support her claim for preference as a custodian, she points to the trial court's finding to the effect that the parties were equally fit to be the child's custodian, and directs our attention to cases holding that when parents contend for custody of a child of tender years, and if all else be equal, the child should be given into the mother's custody. We are familiar with that rule, and numerous others which have guided the courts in resolving the many contests that have arisen over child custody. Defendant, who filed no brief, could have directed our attention to cases holding that male children growing out of tender childhood were in need of a father's guidance. For instance, in Leaton v. Leaton, 435 S.W.2d 408, 1. c. 412, this court said, "(A)s stated in M⎯ L⎯ v. M⎯ R⎯, Mo.App., 407 S.W.2d 600, '(A) profusion of cases convincingly demonstrates that the courts are not reluctant to entrust children into their father's care and custody, where the best interests of the children will be served thereby.' In the case last cited the court commented that a five year old boy whose custody was involved 'is verging on an age at which the guidance, direction, supervision, companionship and love of an understanding father will be most needed and beneficial.' Also see Davis v. Davis, Mo.App., 354 S.W.2d 526."

█ We adopt the trial court's findings that both parties are fit persons to have custody of their child, that their circumstances and conditions of life as such custodians appear to be approximately equal, and that the child's health and welfare would not be jeopardized or impaired by remanding his custody to defendant. We specifically find that there is no evidence of any changed conditions that have arisen since the original decree of sufficient materiality to require or justify an award of the child's custody to plaintiff. Consequently we rule that custody of the child should be remanded to defendant. We are not in accord with and disaffirm the trial court's conclusion of law that it was precluded, by the Oklahoma decree, "from awarding custody otherwise than in accordance with said decree"; also its conclusion of law reciting as a ground for its decision that "The court does not have jurisdiction of plaintiff's claim to change custody."

As for the judgment proper, we amend it by deleting the final words "and plaintiff's petition is dismissed for want of jurisdiction." So amended, the judgment will read: "THEREFORE, it is now by the Court ORDERED, ADJUDGED AND DECREED that custody of Joseph Lee Carman should be forthwith remanded to his father, Leonard E. Carman, and plaintiff herein is ordered forthwith to surrender and to return said child to the custody, care and control of the defendant herein, Leonard E. Carman.".

We affirm the judgment as amended.

SHANGLER, P. J., concurs.

HOWARD, J., concurs in result.