**William Howard JEWELL, Plaintiff-Appellant,**

v.

**Mary Margaret JEWELL, Defendant-Respondent.**

**No. KCD 25815.**

Missouri Court of Appeals, Kansas City District.

July 6, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 7, 1972.

Donald E. Raymond, Woods, Raymond & Raymond, Kansas City, for plaintiff-appellant.

William L. Turner, H. Michael Coburn, Kansas City (Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, of counsel), for defendant-respondent.

WASSERSTROM, Judge.

The issue presented here is whether the court below properly ordered a default divorce in favor of the respondent (hereinafter referred to as the "wife") upon the failure of the appellant (hereinafter referred to as the "husband") to appear for the taking of his deposition. This is merely the culminating episode in a serial of litigation between these parties. The specif-

ic circumstances giving rise to the legal problem now at issue cannot be fairly considered except in the context of the mass of controversy which had preceded.

The history of this litigation began in 1963 when the wife filed suit for divorce in the Circuit Court of Jackson County, Missouri, with the husband also asking for a divorce by cross-bill. Subsequently, the wife filed an amended petition in which she changed from a request for divorce to a prayer for separate maintenance. A decree for separate maintenance was entered in her favor on August 3, 1965, with the court ruling at the same time against the husband on his cross-bill.

Shortly thereafter, the husband went through the formalities of applying for a mail order Mexican divorce. On the basis of this purported mail order divorce, he then proceeded to engage in a marriage ceremony with one Stella Bopp in Arkansas on October 11, 1965, and then in still another marriage ceremony in Illinois with the same woman on November 14, 1965.

Faced with this situation, the wife then filed a lawsuit in the Circuit Court of Jackson County, Missouri, seeking a declaration that the Mexican divorce and the two marriage ceremonies were null and void. Judgment entering such declarations was duly entered by the Circuit Court of Jackson County, Missouri on July 14, 1966.

Thereafter, on April 7, 1969, the husband filed a new divorce proceeding in the Circuit Court of Jackson County, Missouri. The wife answered in this suit, and also asked allowances of temporary attorney's fees and suit money, which were granted. No payment of those allowances has ever been made by the husband.

The next major development was a move by the husband to Arkansas in July, 1970. After a period of approximately three months, during which time he claims to have established the requisite Arkansas residence, he filed an additional suit for divorce under Arkansas law. Substantially concurrent with this move on his part, he ceased making any payments of maintenance under the old 1965 decree of separate maintenance in favor of the wife. On December 28, 1970, the wife amended her answer in the pending Missouri divorce proceedings and added a cross-bill for divorce.

In the meantime, the wife had been attempting to proceed with discovery in the pending Missouri divorce action. She submitted an initial set of interrogatories which were answered by the husband only after an order of the court. She then submitted a supplementary set of interrogatories which have never been answered. Additionally, in November, 1970, she served notice upon the husband for the taking of his deposition on December 5. The husband did not appear on the date set.

On December 28, 1970, the same day that the wife amended her answer to assert a cross-bill for divorce, she also served a new notice to take the husband's deposition in Kansas City, Missouri, on January 4, 1971. The husband did not appear on the day for that deposition. He did respond to the amended answer and cross-bill by filing a motion to strike that pleading and for a more definite statement. The wife filed a motion to strike the husband's pleadings and to dismiss the action.

A hearing was held on the wife's motion on January 20, 1971. At that time, the husband appeared by attorney, who explained to the court that he had received the last notice for deposition at the beginning of the long New Year holiday weekend and that he had been simply unable to get in touch with his client before the deposition date. He further requested the court for a continuance on the ground "that the case is not at issue". In response to the request for a continuance, the following colloquy occurred between the court and counsel:

"THE COURT: * * * I have been informed by counsel for both parties that the case in the Arkansas court is set for

trial on this date. So in answer to your request for a continuance, Mr. Raymond, I might ask you at this time, as I did in the conference, if this case is continued by this Court today, at your request, would you also continue the case in Arkansas until such time as the matter can be heard in this court.

"MR. RAYMOND: Your Honor, I am sorry to say that I do not control the case in Arkansas, so I could not give the Court that assurance. For that matter, I would presume that it probably has already been heard and disposed of there, although I have no information. * * *"

Thereupon, counsel for the wife renewed their motion to strike the husband's pleadings and further asked the court to permit the wife to go forward by default on her cross-bill. After some further discussion between counsel and court, the court proceeded to rule as follows:

"I have asked you as clearly as I could whether your plaintiff would accede to the jurisdiction of this Court, and you told me you couldn't. Of course, if he proceeds with his action in Arkansas, there is nothing pending in this court. I have asked you, as clearly as I could, whether the plaintiff was going to attempt to evade the jurisdiction of this Court by proceeding with this action in Arkansas on this date, and you told me that you could give me no assurance that he wasn't, and possibly he has proceeded * * * So if I can't take that into consideration as to whether or not this was a wilfull [sic] refusal to respond to a deposition, I think that unusual circumstances demand unusual measures. I believe this is such an unusual circum-

stance, so let the record show that the Court sustains the Motion to Strike the Pleadings and Dismiss Action for Plaintiff's Refusal to Give his Deposition, which was filed by the defendant in the case."

Following this exchange, counsel for the husband declared that he was withdrawing from further participation in the case. The court then permitted the wife to proceed with introduction of evidence on her cross-bill for divorce. A divorce was entered in her behalf with provisions for alimony and allowances which need not be detailed.

■ Subsequently, the husband filed motion to set aside the order of divorce, which motion was overruled. On special order of this court permitting appeal out of time, appeal has been taken to this court. On this appeal the husband assigns the following points of error: (1) that the court below should not have entered default judgment because the case was not yet at issue; (2) that the court below failed to make a finding that the husband's failure to appear for depositions was "willful"; (3) that there was no factual basis for a finding that the failure to appear was willful; and (4) that the court below should have granted a continuance.[1]

I

■ A. Under his first point, the husband argues that the trial court could not proceed to a default judgment because the case was not at issue. The fallacy in this argument lies in its unstated assumption that we are concerned here with the usual type of "default judgment" based upon a failure of a party to file timely pleadings.

1. The husband makes additional contentions in the course of his argument that: (1) the wife's motion did not pray for the entry of default judgment, and that therefore, the court below could not properly enter a default; and (2) that the court's order sustaining the motion did not specifically direct a default. Neither of these arguments is properly

presented, since they are not contained in the appellant's Points Relied Upon. Moreover, the wife did expand her motion orally in this regard at the time of hearing, without objection by the husband; and the judgment entry recites that the court sustained the wife's motion to proceed by default on her cross-bill.

It is only upon such assumption that the husband can say in his brief, as he does, that he "was not in default when the case was heard". It is also upon that same assumption that the husband cites cases such as Poindexter v. Marshall, Mo.App., 193 S.W.2d 622, in which it is held that a default judgment may be set aside within three years if it is shown that the judgment was entered while the time for answering was still unexpired.

This case does not involve that type of a default. The basis for the entry of judgment here is not the failure of the husband to file timely pleadings. Instead, the basis for the court's action in permitting judgment to go against the husband was his willful failure to comply with the discovery procedures specified by the court rules. The legal justification for the entry of judgment has nothing to do with whether the husband had pleadings on file or if so, the nature of those pleadings. The justification and legal theory applicable to the present situation is that the husband's willful failure to appear for his deposition raises a presumption that his testimony would have been adverse to him and would sustain the wife's position. This theory was first expounded by the United States Supreme Court in Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530, and was adopted in Missouri by Miles v. Armour, 239 Mo. 438, 144 S.W. 424, 1.c. 426. The doctrine is set forth in the Miles opinion, where the Hammond case is quoted in part as follows:

" ' * * * In its ultimate conception, therefore, the power exerted below was like the authority to default or to take a bill for confessed because of a failure to answer based upon a presumption that the material facts alleged or pleaded were admitted by not answering, and might well also be illustrated by reference to many other presumptions attached by the law to the failure of a party to a cause to specially set up or assert his supposed rights in the mode prescribed by law.' "

Consequently, it has been recognized by the courts of this State that an entry of "default judgment" under Rule 61.01(d), V.A.M.R., is not strictly speaking a default judgment at all, but rather is a judgment "upon a trial by the court". State ex rel. Jones v. Reagan, Mo.App., 382 S.W.2d 426, 1.c. 430. It is for that reason that the court in the Reagan case stated: "Whether or not defendant had an answer on file is not in point."

B. The real gist of appellant's complaint under this heading, although not expressly so stated, seems to be a contention that the trial court did not have the authority to deprive him of a right to make a defense against the wife's cross-bill. Thus, the husband seeks to draw a sharp distinction between the mere striking of his pleadings seeking affirmative relief (his petition and his motions addressed against the wife's cross-bill), as contrasted to a defensive answer. In this connection, the husband cites Richman v. Richman, Mo. Sup., 350 S.W.2d 733, where a trial court had ordered the entry of default judgment against a husband who had become delinquent in the payment of child support and attorney's fees which had been ordered by the court. In the Richman case, the Supreme Court on appeal held that the husband could not legally be deprived for that reason of his right to defend the wife's action. The same result has been reached more recently in Norkunas v. Norkunas, 480 S.W.2d 92, decided April 25, 1972, by the Missouri Court of Appeals, St. Louis District.

The Richman and Norkunas cases are not authority here. Those cases merely hold that the failure to pay child support and similar allowances cannot be made the predicate for the entry of default against such party. That situation is in contrast to the case of a party who fails to appear for a deposition, where court rules specifically authorize the entry of default judgment. Similar such rules are in effect in virtually every state and have universally been held constitutional and enforceable. Miles v.

Armour, Mo.Sup., 144 S.W. 424, 1. c. 426; State v. Standard Oil Co., 218 Mo. 1, 116 S.W. 902, 1. c. 1017; City of Columbia v. Bil-Nor Constr. Co., Mo.App., 411 S.W.2d 856, 1. c. 859. The Richman and Norkunas cases are not in opposition to the cases just cited. 27 Missouri Law Review 558.

## II

█ The husband's second point is a contention that the court below did not find that his failure to appear was "willful". Our reading of the colloquy which occurred between court and counsel, hereinabove quoted, indicates that the trial court did make such a finding as to willfulness. Moreover, the judgment entry specifically recites that the wife's motion was sustained "for plaintiff's wilfull [sic] failure to permit discovery". Accordingly, the record refutes the husband's contention. Moreover, he made no request for a finding in this regard, and it will be assumed that all findings were in accordance with the judgment reached. Rule 73.01(b) V.A.M.R.; Sanderson v. Richardson, Mo. App., 432 S.W.2d 625, 1. c. 630.

## III

The husband's third point is that the evidence does not support a finding of willfulness. In an endeavor to support this position, the husband attempts to limit consideration to the circumstances surrounding the final effort of the wife to take his deposition of January 4, 1971. The husband points out that the notice for that deposition was sent immediately prior to a long New Year's week-end, and he insists that there was a sheer inability by his Kansas City counsel to communicate with him in Arkansas in the short time between the date of notice on December 28, 1970, and the day for depositions of January 4, 1971. The husband cites cases such as Patterson v. C.I.T. Corp., 10 Cir., 352 F.2d 333, for the proposition that a failure of a party to appear for depositions under such circumstances cannot be held to be willful.

█ If those bare facts were all that were involved here, we would have no quarrel with the husband's position—and we have no doubt that neither would have the trial court. However, in order to make the above argument, the husband finds it necessary to disregard many other surrounding facts. These facts consist in part of the husband's past conduct, which can only be characterized as a cavalier disregard of the Missouri courts and their decrees. Thus, he has refused to pay allowances granted by the court below in the present case; he has ceased for a considerable time to pay the separate maintenance award which was granted in the previous 1965 decree; he has failed to answer a second set of interrogatories; and of very direct importance, he failed to appear for depositions previously noticed for December 5, 1970.[2] All of these past actions may properly be taken into consideration as tending to show a pattern of willful resistance to the legal processes of the Missouri courts.

That, however, is not all. The record here leaves no question but that the husband, as late as the date of hearing on January 20, 1971, was still recalcitrant and defiant. The trial court made it abundantly clear that he was prepared to grant the husband a continuance and a further opportunity to grant discovery, provided only that the husband would agree not to proceed with the Arkansas litigation until the Missouri case could be heard. This the husband declined to do, and in this court he still attempts to justify that refusal, arguing that the court below has no right to ask him to give up his privilege of litigation in Arkansas.

█ It must be remembered that on the very day when this hearing was being held

---

2. The husband did appear for a deposition taken in the Arkansas litigation on January 12, 1971. However, at that time he declined to answer questions bearing upon issues in the Missouri litigation.

before the court below in Kansas City, Missouri, there was good reason to believe that the husband was proceeding to trial in the Arkansas case. Thus, when the husband was asking the Missouri court for a continuance, he was at that very time proceeding with litigation in Arkansas, which could very well make the Missouri litigation moot. In other words, the husband in effect was asking the court below to surrender jurisdiction to the Arkansas Court. This the court below was not required to do and was well within its rights in refusing to do.

The husband argues that he had an absolute right to proceed with his Arkansas litigation, claiming that such a "race to judgment" is inherent in our judicial system, and citing in support, State v. Jones, Mo.App., 349 S.W.2d 534, l. c. 539. The Jones case is not in point. That case involved a divorce proceeding filed in Missouri by a husband after his wife had already filed divorce proceedings in Colorado. The wife sought a writ of prohibition to prevent the Missouri court from proceeding to trial. The gist of the holding in the Jones case is that "the question of granting a stay in the proceedings is a matter for the respondent's discretion, and of course, the manner in which the respondent should exercise his discretion is not a proper subject for prohibition."

■ The law is not actually quite such a disorderly jungle of bare-tooth competition between the courts as the husband here attempts to picture. While it is true that the rules requiring abatement of actions do not apply to cases pending concurrently by the same parties in the courts of different states, still the rules of comity do apply and parallel results should normally be expected. Thus, in Grey v. Independent Order of Foresters, Mo.App., 196 S.W. 779, l. c. 783, the law is stated as follows:

"When two courts have co-ordinate jurisdiction, the one whose jurisdiction first attaches will retain it and proceed to final judgment regardless of the action of the other court. State ex rel. Sullivan et al. v. Reynolds, 209 Mo. 161, 107 S.W. 487, 16 L.R.A., (N.S.), 963, 123 Am.St.Rep. 468, 14 Ann.Cas. 198; [Southern] Granite Co. v. Wadsworth, 115 Ala. 570, 22 South. 157; Sherrod v. State, 14 Ala.App. 57, 71 South. 76; Freeman v. Howe, 24 How. 450, [65 U.S. 450,] 16 L.Ed. 749; Home Ins. Co. v. Howell, 24 N.J.Eq. 238; Akerly v. Vilas, 15 Wis. 401; Wallace v. McConnell, 13 Pet. 136, 150, [38 U.S. 136,] 10 L.Ed. 95."

■ Missouri is the state in which the current pending litigation was first instituted. This is the forum whose jurisdiction was first invoked by the husband himself before he decided to file a second suit in the State of Arkansas. Under the rule stated in the Grey case, jurisdiction in the Missouri court should be given priority. The court below was fully justified in protecting its own jurisdiction and the rights of the wife who seeks the benefits of Missouri law. The trial judge is vested with a broad discretion in the matter under consideration and there being no manifest abuse, that discretion as exercised should not be disturbed. State v. Buckstead, Mo. App., 399 S.W.2d 622.

IV

The husband's final point is the contention that the court below should have granted him a continuance. This point is ruled by what has already been said under section III of this opinion. There is no merit to the contention.

The judgment below is affirmed.

All concur.