**Christine VILLAUME,
Petitioner-Respondent,**

v.

**Louis VILLAUME, Respondent-Appellant.**

**No. 38741.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Feb. 21, 1978.

Motions for Rehearing and/or Transfer to Supreme Court Denied April 10, 1978.

Application to Transfer Denied
May 9, 1978.

Lashly, Caruthers, Thies, Rava & Hamel, Michael C. Walther, Judson W. Calkins, St. Louis, for respondent-appellant.

Green, Hennings & Henry, Lewis C. Green, Richard D. Lageson, St. Louis, for petitioner-respondent.

SIMEONE, Chief Judge.

## I.

This is an appeal by appellant, Louis Villaume, from a final order of the circuit court of St. Louis County entered on October 22,

1976, wherein the court (1) granted to the respondent-wife, Mrs. Christine Villaume [1], custody of their two children, (2) ordered the appellant-husband, Louis Villaume, to pay child support for the children, attorneys' fees and expenses and (3) overruled Mr. Villaume's "motion to quash service of process and dismiss" the wife's "petition" seeking permanent custody of the two children. For reasons hereinafter stated, we reverse the judgment.

## II.

The facts giving rise to this proceeding are as follows. Christine and Louis Villaume were married in 1968 in California. They lived together as husband and wife. Two boys were born of the marriage— Brett, age six at the time of the proceedings below, and Nicolas, age five. The parties separated in January, 1975. Divorce proceedings were begun in California by Mrs. Villaume.

On February 14, 1975, Mr. and Mrs. Villaume entered into a settlement agreement in California relating to "all rights and obligations" between them which included their respective property and custodial rights.[2]

The agreement recognized that the custody of the minor children or its modification is subject to a determination by a court of competent jurisdiction, but

"[i]f either of us seek to enforce or modify the provisions relative to the custody or support of our minor children, we acknowledge that the issue will have to be resolved by the court of competent jurisdiction, and therefore agree that the Superior Court of the State of California, in

and for the City and County of San Francisco, shall at all times have continuing jurisdiction to enforce or modify a custody order pertaining to the children or their support."

On April 22, 1975, the Superior Court ordered an interlocutory decree of divorce. As a part of that decree the court (1) ordered that the custody and control of the two minor children be awarded to Mr. and Mrs. Villaume "in joint legal custody" but that the children would reside with the father during the calendar school year and with Mrs. Villaume during school vacations, (2) ordered the husband to pay support for each child when in the custody of the mother and (3) retained jurisdiction over all questions regarding custody and support of the two children.

In June, 1976, at the end of the school year, Mrs. Villaume, in accordance with the California order, took custody of the two sons and came to Kirkwood, Missouri, where she was raised. Trouble arose in August, 1976, when the parties had a conversation about the boys.

On August 20, 1976, a few days before Mr. Villaume came to St. Louis to obtain the custody of the children at the end of the summer season, Mrs. Villaume filed a "petition" in the circuit court of St. Louis County praying (1) for a temporary order that the custody of the children remain with her, (2) for an order that Mr. Villaume be restrained from interfering with her custody and from removing the children from her custody, (3) for a preliminary injunction continuing the temporary restraining order, (4) for "general custody" of the two chil-

---

1. During the course of the proceedings, Mrs. Villaume married Mr. Paul Mahar. We shall refer to her as Mrs. Villaume for the purpose of this appeal.

2. A part of that agreement provided that:
 "The parties have carefully considered the question of the custody of the minor children . . . .. Desiring to achieve a harmonious policy calculated to promote the children's best interests, it is their intention to confer with each other on all important matters pertaining to the children's health, welfare, education and upbringing. The parties therefore

agree that they shall have joint legal custody of the children . . . ..
 1. The children shall reside in the HUSBAND's home during the calendar school year and the WIFE shall have the right to visit our children at reasonable times· and places. During vacations, the WIFE shall have the right to take physical custody of our children and the children shall reside with the mother during said vacations and during and including the approximately three month summer vacation when the children are not in school."

dren, with reasonable visitation by the husband after a final hearing and (5) for an order that Mr. Villaume pay support, attorneys' fees and expenses. The petition alleged that Mrs. Villaume resided in Kirkwood, Missouri, that she had lawful custody of the children and that they were residing with her and "are domiciled there." She alleged that Mr. Villaume "now resides in Lake Charles, Louisiana," that since the date of the California divorce "circumstances relevant to the questions of custody and welfare of the two aforesaid children have changed" and that both parents and the children no longer live in California. She contended that Mr. Villaume had violated the California decree in several respects and that the best interests of the children would be served "by an order of this Court awarding their custody generally to petitioner [Mrs. Villaume] with reasonable visitation rights in respondent [Mr. Villaume]."

On the same date, the trial court ordered that the custody of the two children remain with Mrs. Villaume and enjoined Mr. Villaume from removing the two boys from St. Louis County. The court also entered an order that Mr. Villaume appear on September 10, 1976, and show cause why a preliminary injunction should not issue.

On September 10, 1976, the date set for a hearing for a preliminary injunction in the trial court, Mr. Villaume filed a "motion to quash service of process and dismiss" the "petition" for "lack of jurisdiction over the person" of Mr. Villaume "and lack of jurisdiction over the subject matter of the petition." As grounds therefor he stated that "[i]t was arranged" that on or about August 22 he would fly to St. Louis to reacquire custody of the children but when he arrived at the airport on August 23 [3] the

boys were not there. He found "a sheriff's deputy in the company of petitioner waiting to serve him with process in the lawsuit to which this motion is directed." He was served with summons. In his motion he stated that he remained at the airport some six hours, only long enough to get an airplane to San Francisco where he resides and where the children are enrolled in school. He alleged that he was "lured" into Missouri by Mrs. Villaume for the purpose of subjecting him to personal service.[4] The motion concluded: "Because of the continuing jurisdiction of the California Superior Court . . . over questions of custody and support of the two minor children . . . this court is without jurisdiction over the subject matter of this cause."

In his motion and affidavit in support, Mr. Villaume incorporated certain orders entered on August 26, 1976, by the Superior Court of California wherein that court ordered Mrs. Villaume to appear on September 17, 1976, and show cause why she should not be cited for contempt and why exclusive custody should not be given to Mr. Villaume. The California court also ordered that pending a hearing the husband "shall have exclusive custody" of the children, both parties are ordered to produce the children at the hearing and each is restrained from "interfering with their scheduled enrollment in their San Francisco school in [sic] Sept. 7, 1976" or removing them from the State of California prior to said hearing. Service was had on Mrs. Villaume on September 14, 1976.

Then, on September 16, 1976, the attorney for Mrs. Villaume served upon the attorney for Mr. Villaume a notice to take his deposition on September 23 and requested that Mr. Villaume produce certain docu-

3. Mr. Villaume's affidavits indicate he arrived in St. Louis on August 23. The sheriff's return indicates Mr. Villaume was served on August 24.

4. According to an affidavit filed by Mr. Villaume in support of a motion to quash service and dismiss the petition for lack of jurisdiction, he stated that "[i]t was arranged that I would fly to St. Louis to pick the boys up and take them home . . . .. The only reason that I

went to St. Louis was to pick up my sons and take them home. . . . When I arrived at the airport in St. Louis, my sons were not there. Instead, a deputy sheriff served me with an Order restraining me from taking my sons home. . . . She deliberately lured me to St. Louis County . . . for the sole purpose of serving me with St. Louis court document." In his affidavit he stated the boys were enrolled in a school in San Francisco.

ments. The attorney for Mr. Villaume thereafter sought a protective order from the court below alleging that Mr. Villaume was a resident of California and prayed for an order that discovery not be had. In opposition to the protective order, Mrs. Villaume filed an affidavit.[5]

The protective order was apparently overruled; on September 22, 1976, the trial court ordered that Mr. Villaume appear for the taking of his deposition to be held October 4, 1976.

On September 27, 1976, Mrs. Villaume filed a motion in the trial court for an order to show cause why Mr. Villaume should not be held in contempt for the reason that on September 25, in violation of the court's restraining order of August 20, he physically removed the children from St. Louis County by driving them away in a van from Kirkwood.

On September 30, 1976, Mr. Villaume filed in this court his petition for a writ of prohibition, which was amended on October 1, 1976, praying for a writ (1) "commanding" the respondent judge to dismiss his order requiring Mr. Villaume to appear for deposition at the instance of Mrs. Villaume, (2) "commanding" the respondent judge to dismiss the petition filed against Mr. Villaume for change of custody, (3) ordering

the respondent judge to refrain from proceeding further in the pending cause, and (4) "commanding" the respondent to dismiss his order to show cause why Mr. Villaume should not be held in contempt. In the amended petition for writ of prohibition, Mr. Villaume admitted that, on or about September 25, 1976, in possession of the California order giving him "exclusive" custody of his two minor children, he came to St. Louis and "picked up" his children taking them outside Missouri. He further admitted that, since the entry of the order in California giving him "exclusive" custody of the boys, he "has established residence . . . in Lake Charles, Louisiana, where his two minor children reside with him." [6]

This court denied the petition for the writ of prohibition without opinion.

On October 7, 1976, Mrs. Villaume filed a motion with the trial court to impose sanctions upon Mr. Villaume because he failed to appear at the deposition hearing on October 4.

Under date of October 13, 1976, an order was issued by the judge of the Superior Court of California. The order related that the matter came on for hearing on September 17, 1976, and that Mr. Villaume was present but Mrs. Villaume was not. "Both

5. According to Mrs. Villaume's affidavit filed in opposition to Mr. Villaume's motion for protective order, she stated that Mr. Villaume told her on August 15, 1976, that he "had left San Francisco, had changed his residence and his job, had acquired a house in Lake Charles, Louisiana, had obtained a job there, had moved his furniture, . . . and had enrolled our two sons in school there." According to her affidavit she was told that school began in Lake Charles and that he planned to take the children on August 16. She said she could not agree. He indicated he would give her some short time to think it over. She decided then to remain in Kirkwood and consulted an attorney. On August 18, Mr. Villaume telephoned Mrs. Villaume from Lake Charles and asked whether she wanted him to come and "get the boys" or whether she would bring them. She refused to agree to either proposal. "He said he would telephone me on Sunday, August 22, to tell me of his plans." The two boys are "happily enrolled" in school in Kirkwood.

"On August 22 he telephoned me, and said that he was going to fly to St. Louis from

Louisiana, where he was then living, on the evening of Monday, August 23, and that he planned to stay overnight and take the boys to Louisiana on August 24. . . . "

"It was not arranged by telephone conversation . . . that [Mr. Villaume] would fly to St. Louis to reacquire custody of his two children in accordance with the . . . California court order . . .."

Mrs. Villaume indicated in her affidavit that Mr. Villaume arrived at the airport from New Orleans on August 23, 1976, and that he refused to come to Kirkwood to discuss the matter. She denied that Mr. Villaume was lured into Missouri. "[Mr. Villaume] was not lured into the state of Missouri . . .."

6. Although the notarized petition for prohibition filed by Mr. Villaume's attorney admitted that he established residence in Louisiana after the California order, in September, the California order was not formally entered until October 13, 1976. This amended petition for prohibition was signed by the attorney for Mr. Villaume.

oral and documentary evidence" was taken and Mr. Villaume was examined and cross-examined. An attorney for Mrs. Villaume was present. The California court found (1) that California continues to have and "does exercise jurisdiction over both parties" despite Mrs. Villaume's contention that her attorneys appear specially; (2) that Mrs. Villaume was personally served with the August 26, 1976, orders to show cause; (3) that the custody provisions of April 22, 1975, should remain in effect; (4) that Mrs. Villaume is in contempt; (5) that the Missouri order to show cause and temporary restraining order "does not constitute a defense to the present finding on contempt;" and (6) that the children were brought back to San Francisco on October 4, 1976. The court therefore decreed: (1) that it has and shall continue to have jurisdiction over this case, the parties and the children; (2) that the custody provisions of April 22, 1975, are continued in full force until further order; (3) that Mrs. Villaume is adjudged in contempt for failure to appear on September 17, 1976, but that since the children "were in fact returned to respondent, and to San Francisco, on October 4, 1976, that [Mrs. Villaume] is purged of contempt;" and (4) that the previously issued body attachment is discharged.

On October 22, 1976 [7], the trial court of St. Louis County (1) entered an order finding Mr. Villaume in contempt of court for taking the children out of Missouri and for failing to appear at his deposition and (2) entered a final judgment and decree making certain findings of fact and conclusions of law. The court found, *inter alia,* that Mr. Villaume was not "lured" into the juris-diction, that it "clearly" had jurisdiction to decide the validity of the service, that Mrs. Villaume has acquired a good home in Kirkwood and that the welfare of the children would be best served by "giving custody of the children to the mother." The court therefore entered its order that (1) the children "are to remain in the custody of their mother" and the husband is to have reasonable visitation rights, (2) Mr. Villaume is to pay support for the two boys in the sum of $100.00 per month per child retroactive to September 1, 1976, (3) the motion to "quash service of process and to dismiss [the] petition is overruled" and (4) Mr. Villaume is to pay to Mrs. Villaume $4,600.00 attorneys' fees and $200.00 for expenses of litigation.

Mr. Villaume duly perfected his appeal.

Prior to argument of this cause, Mrs. Villaume filed with this court, "if the court should choose to examine it," a certified copy of an order of the Superior Court of California, dated January 14, 1977, indicating that the California court no longer "has jurisdiction over this case, the parties thereto and their minor children." [8]

On September 19, 1977, the cause was argued in this court. Subsequent thereto counsel for appellant, Mr. Villaume, filed a motion to supplement the trial transcript by adding certain documents of the District Court of the State of Louisiana. Mrs. Villaume, the respondent, while not denying the authenticity of these documents, filed suggestions in opposition to the motion to supplement the transcript. We took the motion with the case.

The motion to supplement the transcript is denied. The additional documents do not

---

7. On October 22, 1976, there was a "hearing" before the court. The hearing consists of five typewritten pages. The attorney for Mr. Villaume offered the October 13, 1976, California order and an offer to the trial judge to consult with the California judge. The attorney for Mrs. Villaume stated that "[t]he Court of Appeals here in St. Louis met the question of who has predominant jurisdiction . . .." The court replied that "I thought we had been through this; we spent several hours. It was appealed to the Court of Appeals; they saw fit not to issue a writ of prohibition against this Court." The attorney for Mrs. Villaume stated:

"Your honor, if you read the Writ of Prohibition, the principal point was this Court had no jurisdiction because of California proceedings. That is what Judge Simeone and Judge Kelly ruled out." Most of the "hearing" dealt with attorneys' fees for Mrs. Villaume. Mrs. Villaume did not testify. No testimonial evidence was taken concerning the change of circumstances or concerning the best interests of the children.

8. This order was not a part of the record of the court below and we take no notice of it.

come within the provisions of Rule 81.12(b) and are not a part of the transcript of the trial court.

### III.

On this appeal the appellant, Mr. Villaume, urges four points for reversal: (1) that the trial court erred in holding that the service of process was valid since the service was fraudulently procured, hence the trial court had no jurisdiction over the person and the orders affecting him are void, (2) that the trial court erred "in exercising jurisdiction of the subject matter" because California had "recently reconsidered the custody question," (3) that the trial court exceeded its jurisdiction by ruling on a "motion to modify custody" without conducting a hearing and (4) that the judgment of the trial court was not supported by substantial evidence of the "need to modify custody."

The respondent, Mrs. Villaume, on the other hand contends that (1) the trial court correctly overruled the motion to quash service of process because the record failed to show that service was fraudulently procured, (2) all the other points, other than the first relating to the validity of service of process, were not preserved or raised below, hence none of them is properly before this court on appeal, (3) although not properly preserved, the circuit court properly exercised jurisdiction over the issue of custody of the two children notwithstanding the "California proceedings" because Missouri was the state with the predominant interest in the welfare and custody of the two children and because both parents and the children abandoned their California residences [9]; (4) the trial court did not exceed its jurisdiction by ruling on the merits of the controversy because (a) the appellant did not raise the issue of the court exceeding its jurisdiction below, (b) the appellant's third point—that the trial court exceeded its jurisdiction by ruling on a motion to modify custody without conducting a hearing—fails to comply with Rule 84.04, (c) an "appropriate" hearing was held at which

"testimony and evidence" were adduced, and (d) the action of the trial court and the ruling on the merits was an appropriate exercise of its discretion to impose sanctions for appellant's persistent disregard of the court's authority; and (5) the judgment of the trial court was supported by "substantial evidence" since it had "evidence" of appellant's "unfitness" and evidence of his "unstable home environment, in contrast to evidence demonstrating fitness of the mother as the custodial parent."

### IV.

In ruling this case, we are governed by the general principles relating to court-tried proceedings. We are to sustain the judgment "unless there is no substantial evidence to support [the judgment], unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### V.

As to appellant's first point that service was fraudulently procured, we believe that, under the facts, there was not such a fraudulent procurement of service so as to vitiate the service upon Mr. Villaume when Mr. Villaume, after the August discussions, came into Missouri. *See Glaze v. Glaze,* 311 S.W.2d 575, 578–579 (Mo.App.1958); *Wyman v. Newhouse,* 93 F.2d 313, 115 A.L.R. 460 (2nd Cir. 1937), *cert. den.,* 303 U.S. 664, 58 S.Ct. 831, 82 L.Ed. 1122 (1938); Anno., 98 A.L.R.2d 551, 561–568 (1964); *Groce v. Skelton,* 206 Mo.App. 471, 230 S.W. 329 (1921). *Cf. Hays v. Hays,* 221 Mo.App. 516, 282 S.W. 57 (1926)—no fraud. The facts do not show such a "luring" into the jurisdiction for the purpose of serving him with process.

### VI.

As to appellant's second point, the respondent vigorously contends that procedurally this and the other points of appel-

---

**9.** Respondent relies on *Kennedy v. Carman,* 471 S.W.2d 275 (Mo.App.1971).

lant were not properly raised or preserved below, hence none of them is properly before this court. Respondent argues that appellant "steadfastly clung to one point, and only one point: the St. Louis County Circuit Court lacked jurisdiction over appellant *and over the subject matter."* (emphasis added). " . . . At no time did Mr. Villaume even suggest that (1) the court below should, as a matter of comity, have declined to act, deferring to the California court (Point II . . .), or (2) the hearing on October 22, 1976 was not an adequate hearing (Point III), or (3) the findings and conclusions of October 22, 1976, were not supported by substantial evidence (Point IV)."

█ While it is true that no claim of error may be considered by an appellate court in civil appeals unless it was presented to and decided by the trial court, *Bunting v. McDonnell Aircraft Corporation,* 522 S.W.2d 161, 168 (Mo. banc 1975), 2A Mo.Digest, Appeal and Error █ (1952), the issue of jurisdiction of the trial court to proceed was, in our opinion, properly preserved and raised in the trial court. When Mrs. Villaume's "petition" was filed in the circuit court, the appellant, Mr. Villaume, filed his "motion to quash service of process and dismiss petition," seeking to "quash service of process on respondent herein and to dismiss petitioner's petition for [1] insufficiency of process, [2] insufficiency of service of process, [3] lack of jurisdiction over the person of respondent and [4] lack of jurisdiction over the subject matter of the petition." In paragraph 13 of that motion, appellant stated: "Because of the continuing jurisdiction of the California Superior Court, County of San Francisco, over ques-

tions of custody and support of the two minor children of the parties hereto, this court is without jurisdiction over the subject matter of this cause." In its order of October 22, 1976, the court found in its conclusions of law that "[t]his Court has jurisdiction over the parties and the subject matter of this lawsuit." Under these circumstances, we believe that the appellant preserved the issue of "jurisdiction" of the court to act—jurisdiction over the person and jurisdiction over the subject matter. The issue of jurisdiction over the subject matter includes, in our view, the matter of declination of jurisdiction—whether the trial court could or should have acted in the circumstances.

█ Respondent argues that appellant's third point—that the court exceeded its jurisdiction by ruling on "a motion to modify custody" [10] without conducting a hearing—was also not preserved. The "hearing," as stated, dealt with (1) a proffer of the California order of October 13, 1976, (2) the effect of the denial of the petition for writ of prohibition by this court, (3) the services and rate of fee rendered by the respondent's attorney, and (4) the assertion by the appellant's attorney that the court had no jurisdiction and would not participate. The "hearing" was not an evidentiary one touching the welfare of the children. No evidence was taken on that issue, not even from Mrs. Villaume. Reliance was based on the affidavits filed by Mr. and Mrs. Villaume [11] and the actions of Mr. Villaume.

We believe that, under these circumstances, the appellant could in Point III properly raise the issue of the adequacy of the "hearing." In *Flickinger v. Flickinger,* 494 S.W.2d 388 (Mo.App.1973), it was held that

---

10. This proceeding is not strictly a "motion to modify custody." The proper procedure in a situation such as this is to file a "petition"—"a proceeding in equity, seeking a Missouri court's award of the child's custody . . .." *Kennedy,* 471 S.W.2d at 276. Whether this proceeding is denominated a "motion to modify" or "petition" the effect is the same—it seeks a change of custodial status of the two children.

11. Mrs. Villaume's affidavit was filed in opposition to the respondent's special motion for a

protective order. Mrs. Villaume stated: "The two boys are happily enrolled in the Tillman School in Kirkwood, where they have the most stable and peaceful home environment they have had in at least a couple of years." The decree states: "Plaintiff has remarried, has acquired a home in Kirkwood, and is able to provide a good home for the children . . . where the children were living and attending school when they were taken away by their father in violation of the order of this Court."

on a motion to modify where there is no hearing at which evidence is adduced the court acts in excess of jurisdiction and the jurisdictional defect may be raised at any time.

The question as to the sufficiency of the evidence to support a judgment in a court-tried case may be raised on appeal, whether or not the question was raised in the trial court. *Lawton-Byrne-Bruner Ins. A. Co. v. Air-Flight Cab Co.*, 479 S.W.2d 218, 221 (Mo.App.1972). This principle is explicitly applicable to appellant's Point IV—that the judgment was not supported by substantial evidence of the "need to modify custody."

We therefore believe that the appellant's points were either properly raised in the trial court and preserved for review or that the points are properly before this court for review.

## VII.

As to appellant's second point, substantively, he contends that the court erred in exercising jurisdiction because California had "recently" reconsidered the custody question. In response, respondent contends that Missouri was the state with the predominant interest in the welfare and custody of the two children because both parents and both children had abandoned their California residences.

The vast, intricate issues relating to the jurisdiction of one state to determine the custody of a child in a custodial tug-of-war were, prior to the landmark opinion in *Kennedy*, 471 S.W.2d 275, hopelessly confused and unintelligible. That landmark opinion "opened the windows" and set this state on a solid course of direction.

In *Kennedy*, Judge Cross, writing for the Kansas City District, laid down the basic guidelines regarding interstate child custody jurisdiction.

In *Kennedy*, the mother and father of Joseph Lee Carman obtained a divorce in Oklahoma in 1968. That judgment awarded the custody of the son to the father and gave the plaintiff-mother certain visitation rights. The mother took the child to Missouri for visitation and refused to return him to his father in Oklahoma. She filed suit "in equity" seeking the Missouri court's award of change of custody. At the time she filed her petition alleging "changed conditions" she was domiciled in Missouri and the child was present. The father was domiciled in Oklahoma. The father entered his appearance. An evidentiary hearing was held. The Missouri trial court decreed that custody should be remanded to the father and "plaintiff's [wife's] petition is dismissed for want of jurisdiction." *Kennedy*, 471 S.W.2d at 278.

The Kansas City District exhaustively discussed the issue of the Missouri court's jurisdiction to deal with the custody issue. Judge Cross examined in detail the prior authorities in Missouri, authorities in other jurisdictions, the original and amended Restatements, legal scholars and treatise writers. These need not be repeated here. The opinion concluded that Section 79 of the Restatement, Second, Conflict of Laws ". . . does not run counter to Missouri decisions . . . ." *Kennedy*, 471 S.W.2d at 283. That section promulgates multistate concurrent jurisdiction when dealing with the custody of a child.

> "A state has power to exercise judicial jurisdiction to determine the custody . . . of the person of a child . .
>
> (a) who is domiciled in the state, or
> (b) who is present in the state, or
> (c) who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the state."

*Kennedy*, 471 S.W.2d at 282, quoting from Restatement, Second, Conflict of Laws, Section 79.

The *Kennedy* decision recognized two distinct aspects of child custody jurisdiction: (1) whether the state has power to affect the custody of a child when one of the three situations above is present and (2) whether the trial court should necessarily exercise the power it has. That "is still another

question." *Kennedy*, 471 S.W.2d at 282. Of course, the overriding consideration is the welfare of the child; hence, courts, while recognizing the applicability of the full faith and credit clause in the absence of a change of circumstances, *see* Anno., 35 A.L.R.3d 520 (1971), have not felt bound by that clause when dealing with the welfare of a child.[12]

■ Authorities, including *Kennedy*, which accept the doctrine of concurrent multi-state jurisdiction recognize that jurisdiction should be exercised with self-restraint, giving due respect for the foreign judgment. Hence, a court with technical jurisdiction should act to determine the custody of a child when the child's welfare might be jeopardized if the court failed to act. The *Kennedy* court concluded therefore that the Missouri court had power or authority to act and had the choice of two alternatives: (1) if, in its sound discretion, it deemed that intervention was necessary to protect the child's welfare and that his best interests would be served by entertaining and deciding the case on its merits, the court was empowered to do so, or (2) if the court believed that no threat to the child's welfare existed and that the state rendering the original decree had a more substantial interest in the welfare and afforded a more convenient or effective forum[13], the court could decline jurisdiction and dismiss the action. But in either event the merits of the proceeding, whatever its form, "can not be summarily determined by a perfunctory examination of the pleadings." *Ken-*

*nedy*, 471 S.W.2d at 288. There should be at least a preliminary evidentiary hearing to determine the facts, which, if true, would cause the court to be apprehensive or concerned for the welfare of the child.

The court in *Kennedy* finally held that while there was technical jurisdiction there was not sufficient proof of such change of circumstances to warrant a change of custody to the wife. The court stated:

"In order for plaintiff to prevail in the controversy it was necessary for her to prove that *changed circumstances* had arisen, since the original decree, of sufficient substance to warrant belief that the child's welfare would be benefited by the *custody change* she sought. . . . In our opinion plaintiff has not borne her burden of proof. As we have already pointed out, the only change in circumstances worthy of note is her remarriage. . . ." 471 S.W.2d at 288. (emphasis added).

*Kennedy* has been approved in numerous subsequent Missouri decisions.[14]

■ Applying the principles laid down in *Kennedy* and under all the unique facts here, we hold that, although the trial court had "technical jurisdiction" over the subject matter, it should have declined to exercise its jurisdiction in favor of the California court and dismissed the proceedings.

First, there was in existence a California decree awarding custody of the two boys here to both the husband and wife in "joint legal custody."[15] The father, Mr. Villaume,

---

12. The Supreme Court of the United States has not directly delineated the applicability of the full faith and credit clause to the area of child custody. *See Ford v. Ford*, 371 U.S. 187, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962); *Kovacs v. Brewer*, 356 U.S. 604, 78 S.Ct. 963, 966, 2 L.Ed.2d 1008 (1958); *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 906–907, 91 L.Ed. 1133 (1947); *see also Kennedy*, 471 S.W.2d at 284–286.

13. Factors to be considered in allocating jurisdiction include convenience of the forum for the litigants and maximum access to the relevant evidence where most of the witnesses and physical locations are in the vicinity of the court.

14. *Searles v. Searles*, 495 S.W.2d 759 (Mo.App. 1973)—Missouri exercised jurisdiction where the child's domicile was located, where child went to school and where witnesses were located; *Morgan v. Morgan*, 542 S.W.2d 617 (Mo. App.1976); *Matter of C. G.*, 539 S.W.2d 705 (Mo.App.1976); *Blair v. Blair*, 505 S.W.2d 444 (Mo.App.1974). *See also Hawkins v. Hawkins*, 264 Or. 221, 504 P.2d 709 (en banc 1972).

15. Respondent makes much of the fact that the California decree established "joint legal custody," not recognized in Missouri. The fact is that the California decree, while giving "joint legal custody," provided that the children were to reside with the husband during the calendar school year and with the wife during summer

was entitled to custody during the school year and Mrs. Villaume for the vacation period. When the children were not returned to Mr. Villaume in August, Mrs. Villaume, instead of petitioning the California court which still had jurisdiction, petitioned the trial court alleging *inter alia* that the circumstances have changed in that

> "[b]oth parents and both children have left California . . . . The children will no longer be able to live in the home, and attend the school, which were planned for them . . . [The husband] has moved to Louisiana . . . where he is not well able to care for the children."

When Mr. Villaume, after the August discussions, came to Missouri with the purpose of returning the children, the record indicates that he returned to California and began supplementary proceedings there and a hearing was held in California on September 17, 1976. After the California hearing continuing the custodial arrangements, Mr. Villaume came to Missouri and took the children. A record of the California order dated October 13, 1976, continuing the earlier custodial arrangements was before the trial court below. The record is not exactly clear and the affidavits and pleadings are contradictory as to the exact date when Mr. Villaume changed his residence from California to Louisiana. But in September, 1976 when the California hearing was held and in October when the California written order was issued, the California court continued to retain jurisdiction of the cause.

Second, intervention by the trial court was not essential for the protection of the children's "welfare." There was no threat to the children's well-being. There were no impending issues that could not have been determined by the California court. There were no allegations that the children were subject to harm. There was no real show-

ing that the Missouri court with technical jurisdiction should act because the child's welfare might be "jeopardized." At the time of the trial court's order on October 22, California still had technical jurisdiction because of the hearing held on September 17 and its written order in October. The difficulties that arose—the wife was held in contempt of the California orders, the husband was held in contempt of the Missouri orders, the wife was ordered by California to return the children to that state, the husband was ordered by Missouri to refrain from removing the children from this state—all could have been avoided by a declination of jurisdiction by the trial court.

The sole issue raised by Mrs. Villaume's "petition" was that Mr. Villaume had changed his residence, that the children would not be attending the same school and that Mr. Villaume had violated the California "decree" by not consulting with Mrs. Villaume thus violating her visitation rights.

Third, under all the circumstances of this case, we believe that the trial court, although clothed with technical jurisdiction, should have declined to exercise jurisdiction in this proceeding and should have deferred to the California court for a determination of a change in custodial rights.

## VIII.

Appellant's third point is that the court erred in "ruling on a motion to modify custody without conducting a hearing." In response, respondent contends that (1) appellant's third point was not raised in the court below, (2) appellant's third point does not comply with Rule 84.04(d) [16], (3) the court conducted an "appropriate hearing at which testimony and evidence was adduced," and (4) the court's action was an

---

vacations. The petition filed by respondent in the court below sought "general custody" of the two children. The trial court found that "[t]he welfare of the children would be best served by giving custody of the children to the mother." While *Kennedy* did not deal with joint legal custody, the principles of *Kennedy* are broad enough to apply to the situation here.

16. Where the issue involves changes in custodial status of children, courts have been and are reluctant to apply the rules strictly. *C_____ C_____ v. J_____ A_____ C_____*, 499 S.W.2d 809, 811 (Mo.App.1973); *Wheeler v. Wheeler*, 479 S.W.2d 505, 506 (Mo.App.1972).

appropriate exercise of discretion to impose sanctions for appellant's "persistent disregard of the court's authority."

The trial court, in its order of October 22, 1976, decreed that the children were to "remain in the custody of their mother"[17] and found that the "welfare of the children would be best served by giving custody of the children to the mother."

It is true that there were documents filed in the case, but there was no "hearing" at which evidence and testimony were adduced relating to the change of status of the children. The only hearing held consisted of five typewritten pages.[18] The "evidence" consisted mainly of the time counsel for Mrs. Villaume spent on the case and the hourly rate. No testimony was taken concerning the circumstances relating to the change in status of the children's custody from Mr. to Mrs. Villaume. Mrs. Villaume did not testify. The transfer of custodial status was made on the basis of the pleadings and affidavits filed in the cause and the conduct of Mr. Villaume.[19] In our view, there was no "hearing" at which evidence relating to the welfare of the children was adduced. Mrs. Villaume attempts to justify this procedure under Rule 55.28, which authorizes the court to hear the matter on affidavits presented by the respective parties when a motion is based on facts not appearing of record.

■ This Rule has not, in the past, been applicable to situations involving a "motion to modify" custody of children. Under Rule 43(e) of the Federal Rules from which Rule 55.28 is derived, affidavits have been limited to motions to dismiss, motion to quash service, summary judgment or challenging the jurisdiction of the court. *See* Wright & Miller, Federal Practice and Procedure, § 2416 (1971).

Rule 55.28 is a procedural rule relating to pleadings and motions. A motion to change custodial status is in the nature of an independent, separate proceeding. *Ex Parte J. A. P.*, 546 S.W.2d 806, 808 (Mo.App.1977).

■ The principle long adhered to in proceedings akin to this one is that the court must hear evidence on the subject. *Cf. Lane v. Lane*, 292 S.W. 1066 (Mo.App. 1927); *Dolan v. Dolan*, 540 S.W.2d 220, 221 (Mo.App.1976). In *Flickinger*, 494 S.W.2d at 394, it is said:

> "An order purporting to rule on a motion to modify custody provisions . . . made without a hearing at which evidence is adduced has been held to be in excess of the court's jurisdiction, and such jurisdictional defect can be raised at any time."

We believe this principle to be applicable to the situation here. We believe that the trial court, in making its order changing the custodial status of the children and "placing custody in the mother" without hearing testimony on the matter, abused its discretion, and in doing so the court erred. Changing the general custodial status of children by affidavits would be a dangerous practice.

Respondent, Mrs. Villaume, contends that the trial court was justified in imposing sanctions for the appellant's "persistent disregard of the court's authority." Rule 61.-01(f). She argues that certain decisions, including *Jewell v. Jewell*, 484 S.W.2d 668 (Mo.App.1972), authorize the action of the trial court. The issue in *Jewell* was whether the trial court properly ordered a default divorce in favor of the wife when the husband failed to appear for the taking of his deposition. The court held the default divorce was properly entered. We do not

---

17. We, as well as the parties, have taken this language to mean that exclusive custody of the two boys was transferred to Mrs. Villaume.

18. Part of the colloquy between counsel and the court related to the denial of the petition for a writ of prohibition filed in this court. Statements were made that the cause was "appealed" to this court. The petition for a writ of prohibition may be denied for many reasons.

It does not deal with the merits and is not, as respondent contends, "res judicata."

19. Mr. Villaume did not appear for the taking of his deposition and the trial court found him in contempt. We make no adjudication as to the validity of the contempt order for refusing to appear for the deposition. That is not an issue on this appeal.

believe that *Jewell* is dispositive of the issue here. There Missouri was the state in which the litigation was first instituted, and the case did not deal with the sensitive area of the custody of children. There are sufficient sanctions authorized by Rule 61.01(d) for "persistent disregard" including contempt. Mr. Villaume was adjudged in contempt. The sanctions authorized in Rule 61.01(d) in our opinion do not extend to changing the custodial status of minor children in the absence of an evidentiary hearing on the merits, and for the court to do so was an abuse of discretion.

### IX.

Finally, appellant contends that the judgment was not supported by "substantial evidence of the need to modify custody." Respondent counters with the argument that the court had before it "evidence [20] of appellant's unfitness as a custodial parent, and evidence of appellant's unstable home environment, in contrast to evidence demonstrating fitness of the mother as the custodial parent."

 We need not discuss this point in detail. Because of the view we take, the court should have, under *Kennedy*, declined to exercise jurisdiction. On this point, suffice it to say that we believe (1) the trial court abused its discretion in changing the general custodial status of the two children on the basis of the pleadings, affidavits and the actions of the appellant without holding an evidentiary hearing; (2) "[i]n order for plaintiff to prevail in the controversy it was necessary for her to prove that changed circumstances had arisen, since the original decree, of sufficient substance to warrant belief that the child's welfare would be benefited by the custody change she sought," *Kennedy*, 471 S.W.2d at 288; (3) when a change in general custodial status is sought, by whatever name it may be called, the character and fitness of the petitioner should be subjected not only to a broad but to a thorough investigation, and very clear and convincing proof of such fitness should be offered. In this regard the burden of proof is on the moving party. *Cf. Meinking v. Meinking*, 529 S.W.2d 440, 443 (Mo.App. 1975); (4) the procedure followed here did not rise to the level of clear and convincing proof; and (5) not every change of circumstance would justify a court in changing the general custodial status of children.[21]

### X.

Under all the circumstances and after reading and studying the trial transcript, the briefs and authorities relied upon by the parties, we conclude: (1) while the trial court had technical jurisdiction to act, it should have declined to exercise its jurisdiction in favor of the California court to determine the custodial rights of the parents relative to their children; and (2) the court erred in transferring general custody of the two sons without holding an evidentiary hearing on the matter. The order of the trial court in which it (1) ordered the two children transferred to the custody of Mrs. Villaume and (2) ordered support for the children and granted fees and expenses is without efficacy. In misapplying the law, the court erred. *Murphy*, 536 S.W.2d at 32.

The judgment is reversed.

ALDEN A. STOCKARD, Special Judge, concurs.

NORWIN D. HOUSER, Special Judge, concurs in result.

---

**20.** The "evidence" consists of statements in the "petition," in peripheral affidavits, and the recalcitrance of the appellant.

**21.** *Cf. Engler v. Engler*, 455 S.W.2d 36 (Mo. App.1970); *Kennedy*, 471 S.W.2d at 288–289—remarriage insufficient; *Blair*, 505 S.W.2d at 446–447; *Lickteig v. Goins*, 458 S.W.2d 596 (Mo.App.1970)—move out of state.